PLATNER v. PLATNER ET AL.

1. **Husband and Wife:** ALIMONY WITHOUT DIVORCE. Where a wife, for a fault of her husband which would entitle her to a divorce, leaves him and lives apart, she may sue for and recover from him the means of such separate support as is suited to their station in life, without asking for a divorce.

2. ———: EVIDENCE OF CRUELTY JUSTIFYING SEPARATION. The evidence in this case considered, (see opinion,) and *held* to establish such cruelty on the part of the husband as justified the wife in leaving him.

3. ———: DIVORCE IN OTHER STATES: PLEADING: PROOF. Defendant set up, as a defense to a claim by his wife for separate support, that he had previously procured a divorce in another state. Plaintiff replied that the divorce referred to was void for want of jurisdiction, and because obtained by fraud. *Held* that this was not such an admission of the decree of divorce as relieved the defendant of the burden of establishing it by evidence.

4. ———: FRAUDULENT CONVEYANCE TO DEFEAT WIFE: EVIDENCE ESTABLISHING. The evidence in this case examined, (see opinion,) and *held* to reveal a conspiracy on the part of defendants, by means of fraudulent conveyances, to defeat the wife of her interest in lands, and of her right to recover from her husband the means of her support.

5. ———: ALIMONY: REASONABLE ALLOWANCE. In view of the facts apparent in the record, *held* that the allowance to the wife in this case for her separate support was not excessive.

*Appeal from Fremont Circuit Court.*

SATURDAY, JUNE 6.

THE petition and amendment thereto state that the plaintiff and the defendant Henry Platner are husband and wife, and that they are living separate and apart from each other; that the said defendant refuses to contribute to the support of the plaintiff and her children, and she asks that she be allowed alimony for their support. She does not ask for a divorce. The petition further states that her husband has fraudulently conveyed his property to his co-defendants, and she asks that whatever amount is allowed her shall be made a lien on the

real estate so conveyed, superior to the rights of the defendants. The material allegations of the petition, except the marriage, are denied, and the defendants deny all fraud or bad faith on their part. The defendant Platner pleaded that he had been granted a divorce from the plaintiff in the state of Ohio. To this the plaintiff replied, without in terms admitting or denying such divorce, that it had been obtained by fraud. The relief asked by the plaintiff was granted, and the defendants appeal.

*Stockton & Keenan*, for appellants.

*W. B. Ferguson* and *J. L. Mitchell*, for appellee.

SEEVERS, J.—I. The cause is triable *de novo* in this court, and it is contended by counsel for appellants that permanent alimony cannot be decreed "without a divorce for causes which would authorize a divorce." In *Farber v. Farber*, 64 Iowa, 362, it was contended that alimony could not be granted except for a cause which would warrant a decree of divorce; and in *Graves v. Graves*, 36 Iowa, 310, and *Whitcomb v. Whitcomb*, 46 Id., 437, it was held that an action like the present could be maintained. In none of these cases was it claimed that there was any distinction between permanent and temporary alimony, and we are by no means sure that what the court decreed in the present case should be regarded as permanent alimony, and that the plaintiff has no further claim on her husband or his property.

*1. HUSBAND and wife: alimony without divorce.*

It is the duty of the husband, if of sufficient means, to support his wife and children in accordance with his and their station in life, and this is all the plaintiff asked, and the court decreed. An amount sufficient for this purpose was, in the opinion of the court, awarded to the plaintiff, and whether she will be entitled in future to anything more remains an open question. While the plaintiff was entitled to her support, and has the legal right to ask that her husband shall contrib-

ute from his means thereto, she was not bound to ask for a divorce, although a sufficient cause therefor existed. It is the policy of the law to discourage rather than encourage divorces. The conduct of the plaintiff in this respect is commendable, and clearly she should not be deprived of. a support for the reason that she has not asked for, although she is entitled to, a divorce.

II. The plaintiff voluntarily left the house and home provided for her by her husband. If she did so without suffi-

2. ——: evi-dence of cru-elty justifying separation.
cient cause, it will be conceded that she is not entitled to any relief whatever. She claims that she could not live with her husband because of his cruel and inhuman treatment, which endangered her life, and that for this reason she left him. If this is true, then she is entitled to relief. But counsel insists that the evidence fails to establish that she was so treated, and that she left the home provided for her without cause. The parties were married in 1868, and the separation took place in March, 1880. If the evidence of the plaintiff can be believed, her husband as early as 1870 attempted to throw her out of the house, and gave her a push, which, owing to the fact that her foot came in contact with something, caused her to fall across the doorstep, which greatly shocked her, and she became ill, and was delivered of a still-born child. After that, and up at least to 1878, he struck and kicked the plaintiff on several different occasions, and threatened to shoot and kill her. He substantially accused her of being unduly intimate with other men, and in language readily understood, in substance, said he was not the father of her children. The acts of violence were accompanied with abusive words. The times when and where he abused her were stated by the plaintiff, and it seems scarcely possible that she could have made up the story and sustained herself as well as she did on cross-examination. We feel constrained to believe that the plaintiff has in the main told the truth, with possibly, at least, some exaggeration. It is true that the defendant Platner, as a witness in

his own behalf, testifies that he at no time used personal violence toward, or otherwise mistreated, the plaintiff. The plaintiff worked hard, and seems in every respect to have performed acceptably her duties as a wife and mother. Her husband makes no serious complaint against her in this respect. All that he testifies to is that she was hard to manage, and we think this may be so, when the means employed by him are considered. He further testifies that she insisted upon her right to receive the addresses of other men. But he does not say that she was guilty of undue intimacy with such men, and, according to his declarations to at least one witness, she was a " good woman."

The last act of personal violence testified to by the plaintiff was in 1878, and counsel insist that the plaintiff is not entitled to relief because she did not leave him at that time, or at least sooner than she did. Condonation is not pleaded or claimed; and from 1878 until March, 1880, when the plaintiff left her husband, his conduct towards her in no respect improved, except that he did not use personal violence. On the contrary, his conduct was such as to show a total want of affection, or even respect, either in sickness or in health. There was no forgiveness of conduct in the past, but the plaintiff simply endured until it ceased to be a virtue. There are many other things in the conduct of the defendant Platner to which we might refer, but deem it unnecessary. We find as a fact that the plaintiff was justified in leaving when she did, because of his cruel and inhuman treatment, and wonder why she did not do so long before. Counsel for the appellants insist that the plaintiff is in no manner corroborated; and, this being so, she would not be entitled to a divorce, because the statute provides that a divorce shall not be granted on the evidence of the plaintiff alone, (Code, § 2222,) and therefore it follows that she is not entitled to relief in this action. There is at least some doubt whether the statute has any application to an action of this character; but, conceding that it has, we find from the evidence that the

plaintiff is corroborated to a sufficient extent by the evidence of other witnesses.

III.   The defendant pleaded that he had been divorced from the plaintiff in Ohio in 1882, and that this case was not tried below until after that time; and counsel for the appellants insist that this constitutes a bar to any relief in this action.   There was no evidence introduced to support this defense.   On the contrary, the defendant Platner testified that his petition for a divorce in the courts of Ohio had been dismissed.   It is, however, contended that the fact that there was such a divorce is admitted by the pleadings.   In the reply the plaintiff stated that the decree referred to in the answer was void for want of jurisdiction, and because obtained by fraud.   The reply did not, in terms, admit the existence of the decree; but, if such a decree had been obtained, then the plaintiff, because of the matter pleaded in the reply, sought to avoid the effect of the decree.   In such case the pleading was essential, under Code, § 2665.   Whether the plaintiff would have been required to admit or deny the existence of the decree, if a motion for a more specific statement had been filed, we are not required to determine.   It is sufficient to say that its existence was not admitted, and therefore the burden was on the defendants to establish it.

*3. ——: divorce in other states: pleading: proof.*

IV.   The remaining question to be determined is whether the defendant Platner made a fraudulent disposition of certain real estate to his co-defendants, prior to the separation of these parties.   In March, 1880, the legal title to the real estate was in the plaintiff. A few days prior to that time the defendant Platner induced the plaintiff to sign and acknowledge two deeds, in which there was a blank left for the name of a grantee. These deeds are dated March 1, 1880, and when executed were taken by the defendant Platner, and during that month the name of the defendant John Haunstein was inserted therein, and the same delivered to him in the state of Ohio,

*4. ——: fraudulent conveyance to defeat wife: evidence establishing.*

where he resided, either by Platner personally, or they were sent by mail.  Haunstein testifies that he purchased the land of Platner in February, 1880, without knowledge of any trouble between the plaintiff and Platner, and that he paid about $7,000.  A portion of the land is situated in Fremont county, Iowa, and for this he testifies he paid $5,000, and for the other portion, which is situated in Nebraska, he paid $2,000.  He testifies that he left Ohio in February, 1880, and came by rail to Shenandoah, a town in Fremont county, where he met Platner, whom prior to that time he had never seen.  He looked at the land in Fremont county, and purchased it at the price above stated, and paid $500 of the purchase money, for which he took a receipt, which, however, was not introduced in evidence.  He did not obtain an abstract of title, but made inquiries in relation to the title of some persons at the county seat, but the names of such persons he does not state.  From the inquiries made, he became satisfied that the title was good.  He, immediately after making the purchase, left for Ohio, without, however, obtaining a deed.  He however received the deed, as has been said, but his name was not therein as grantee.  His name as such was written in the blank for this purpose by a notary public in Ohio.  This deed was not filed for record until February 1, 1881.

The land in Nebraksa, for which Haunstein agreed to pay, and claims he did pay, $2,000, he never saw, and had no knowledge as to the title except what Platner may have told him.  Haunstein had never been in Fremont county prior to the time when he made the purchase of the land, and testifies that he bought it on speculation.  Such is the extraordinary story told by Haunstein in relation to his purchase of the land.  It will be observed that he purchased of a stranger. He made no such examination of the title as is usual with business men, which he claims to be.  He paid $500 of the purchase money to this stranger, but does not get any deed, or sufficiently explain why he did not, and returned to Ohio. When he received the deed he caused his name to be written

therein as grantee, paid the balance of the purchase money, and did not file it for record for nearly a year thereafter. We are unable to credit such a story in the absence of any explanation; but more extraordinary still is the transaction in relation to the Nebraska land, which, as we have said, was purchased and paid for without being seen, or knowledge obtained as to the title. Besides this, Haunstein is unable or unwilling to sufficiently explain when and where he obtained the money to pay for the land. His deposition was taken twice, and he contradicts himself in material matters therein. The evidence that Platner intended to convey his property to some one for the purpose of defrauding the plaintiff is abundant, consisting in part of his declarations to that effect. There are other circumstances tending to show fraud on the part of Haunstein, to which we have not referred, deeming the foregoing facts, which are mainly deduced from his own evidence, sufficient to show that he is not a purchaser in good faith, for value. The ordinary experience of men engaged in transactions of this character forbid that we should do so. It is so far out of the usual and ordinary business methods adopted among men that we feel constrained to say that the transaction detailed by Haunstein cannot be true.

V. In the latter part of 1880, or early in 1881, Platner became a resident of Blufton, in the state of Ohio, at which place the defendant Henry Haunstein also resided.

THE SAME.    In March, 1881, there was filed for record a deed executed by John Haunstein, conveying the premises in Fremont county to his father, Henry Haunstein; the consideration named in the deed being $5,500, which Henry Haunstein testifies he agreed to pay. Platner, in September, 1882, married Emma Haunstein, a daughter of Henry Haunstein, and thereafter, for a time at least, cohabited with her as his wife. Counsel for the appellants insists that Henry Haunstein is a purchaser in good faith, without knowledge of any fraud; but we are forced to the conclusion that he is not. There are many circumstances which irresistibly force us to this conclu-

sion, but we deem it sufficient to say that the fact that Henry Haunstein is unable to state when or where he obtained the money to pay for the land, as he says he did, in connection with other circumstances, including patent and unexplained contradictions on material matters contained in two depositions of Henry Haunstein taken at different times, satisfies us that Platner and the two Haunsteins colluded together for the purpose of defrauding the plaintiff. We are unable to give any credit to the evidence of the Haunsteins.

Complaint is made in relation to the amount allowed the plaintiff for the support of herself and children. It is said that 5. ——: alimony; reasonable allowance. Platner, by misfortune, has lost his property. From what has been said, it will be observed that we do not believe this is so; because, as between the plaintiff, her husband, and the Haunsteins, Platner is the owner of lands and farms owned by him at the separation. The allowance made is not too large, and the payment of the same was by the circuit court properly charged on the real estate.

AFFIRMED.