McKelvey v. McKelvey.

ANNA K. McKELVEY v. JOHN A. McKELVEY *et al.*

No. 15,668.   (99 Pac. 238.)

SYLLABUS BY THE COURT.

1. DESCENTS AND DISTRIBUTIONS—*Non-resident Wife—Gift of Land by Husband.* A husband may, in good faith, make a gift of land owned by him in this state of which his wife has made no conveyance without defrauding her, if she has never resided here; but to make the gift effective to bar her statutory right accruing after his death he must consummate it by a conveyance, and the grantee must not be guilty of actual fraud in obtaining it.

2. ——— *Fraudulent Attempt to Defeat Widow's Statutory*

*Right.* Certain facts stated in the opinion are held to show a fraudulent attempt to defeat a widow's statutory right in land owned by her husband in his lifetime, of which neither he nor she had made a conveyance.

Error from Johnson district court; WINFIELD H. SHELDON, judge. Opinion filed December 12, 1908. Reversed.

*I. O. Pickering,* and *H. Clay Horner,* for plaintiff in error, and cross-petitioner in error, I. O. Pickering.

*Ogg & Scott,* and *J. P. Hindman,* for defendant in error John A. McKelvey.

The opinion of the court was delivered by

BURCH, J.: The action in the district court was brought by a widow to recover the share of her deceased husband's estate given her by the statute. A former judgment against her was reversed in the case of *McKelvey v. McKelvey,* 75 Kan. 325, 89 Pac. 663, 121 Am. St. Rep. 435. Upon a retrial the court found the facts in detail, and with the findings of fact included certain inferences of fact relating to good faith, want of collusion, innocence of purpose to defraud, and some other matters. Conclusions of law were stated adverse to the plaintiff, and judgment was again rendered against her.

This court does not feel bound by the inferences of fact derived by the trial court from the particular facts found. It is able to deduce its own conclusions; and, with all due respect to the careful and conscientious judge who presided at the trial, to the mind of this court the findings spell fraud in letters too bold to be effaced by the presumption of rectitude indulged by the law when the conduct of frail human beings is under consideration.

John C. McKelvey, a resident of Illinois, owned the land in controversy. He had a family of children by a first wife, which included the defendant, John A. Mc-

Kelvey. He married the plaintiff, Anna K. McKelvey, and had a daughter by her. He wanted the land for the first set of children. His wife wanted her daughter to have a share. In 1879 the husband wished to deed the land away, but the wife refused to sign unless her daughter received part of the proceeds. The husband persisted in the determination that the children by his former wife should have the land, and the attitude of his wife furnished a sufficient motive for what followed. In 1883 the defendant, John A. McKelvey, was a partner with his father in the butcher business in Illinois, and did not have to exceed $150. In March of that year the father and son came to Kansas. The father put the son in charge of the land and furnished him a team and tools with which to go to farming, telling others he intended the land for the three children by his first wife.

It appears that the father was in Kansas on this occasion about three weeks. While here he expressed a desire to dispose of the land in a way that he could get it back. He said he needed some money, but desired to save the land for his children. On March 23, 1883, when ready to return to Illinois (the evidence shows it was on the day he came to town to go home), he asked his cousin to introduce him to Dr. James Bell, of Olathe, saying he desired to meet the doctor as he understood the doctor had money and he might be able to arrange to let the doctor have the land and so get some money. The introduction followed, but the cousin was not a witness to the calamity which immediately befell. All we know is that, on the same day, Doctor Bell handed to an attorney of Olathe a promissory note to one Angus Beaurmond for $2719.35, dated at St. Louis, February 18, 1879, due in two years and purporting to be signed by the elder McKelvey, and requested the attorney to bring suit upon it. The doctor furnished the deposit for costs and agreed with the attorney upon a fee. Bell represented to the attorney

that said Angus Beaurmond was a friend of his, but except for this nobody, so far as the record discloses, ever heard of him before or since. On the same day suit was brought. A summons was issued but never returned. McKelvey accepted service and agreed to judgment at the March term of court, but was careful to stipulate that his land should not be attached. Four days afterward the cause was placed on the trial docket and judgment was taken, McKelvey not being present or represented by counsel. Seven days after judgment execution issued. The land was seized and sold, not to the supposed creditor, but to Doctor Bell, for $4000. Only $847.74 was paid in cash, the attorney receipting to the sheriff for the amount of the judgment except costs. The attorney received no money from the sheriff and paid no money to Bell, and, of course, there is no evidence that Beaurmond was ever paid anything by anybody. On June 4 the sheriff's sale was confirmed and a deed was ordered to Doctor Bell. The elder McKelvey sent to his son an order upon the clerk of the court, dated in Illinois on June 5, for the balance of the proceeds of the sale, less costs. On June 9 the defendant drew this balance in the sum of $796.04. What became of the money does not appear, and what else, if anything, occurred between father and son is undisclosed.

Eight months afterward Doctor Bell deeded the land to the defendant and his brother and sister of the whole blood. The deed was procured to be made by John C. McKelvey. The consideration named was $8000. What transpired between McKelvey and Bell is undisclosed. The defendant was not called into the transaction until the executed deed was delivered to him. No explanation is offered as to how John C. McKelvey could have raised even the amount of the judgment, much less the deed price of the land. The defendant paid nothing for the land, and his brother and sister paid nothing. He withheld the deed from

record for more than eight years. He paid the taxes which under the law fell due and were payable while Doctor Bell held the sheriff's deed, taking the receipt in the name of Doctor Bell. He continued to take his tax receipts in Doctor Bell's name for many years. While doing this, and while withholding Doctor Bell's deed to him from the records, he visited his father and family in Illinois. His step-mother said to him she heard the land was sold. He says she asked him if it had been sold. He returned an answer which on its face was intended to conceal the facts within his knowledge, to suppress the truth, and to mislead the plaintiff. He said: "I don't know whether it could [be sold] or not without you signing the deed." She remained ignorant of what had taken place until after her husband's death. In the year 1892 the defendant took deeds for the supposed interests of his brother and sister, and filed all his deeds for record. His possession was not disturbed or inquired into by Doctor Bell, and he paid no rent to Doctor Bell or to his brother and sister and has received all the profits of the use of the land. His father died in 1903. Within a year suit was duly commenced by the widow, who has never resided in this state. A portion of her interest has been deeded to I. O. Pickering, a defendant in error, who also complains of the judgment.

It is not necessary to debate the meaning of these facts. The Beaurmond suit and judgment, the sheriff's deed and the Bell deed were fraudulent contrivances to cut off the plaintiff's statutory rights. The defendant was not innocent in the matter. If not privy to the fraud at its inception he became so later, lent his aid to make it effectual, and knowingly attempted to profit by it.

The court is satisfied with the statement of controlling legal principles made in the former decision. An additional question is brought into the case by a finding that John C. McKelvey made a completed parol gift of

the land to the defendant and his brother and sister
when the defendant was first placed upon the land and
set to farming. The facts specifically found are incon-
sistent with such a conclusion. John C. McKelvey
claimed at the time, and continued to assert, the right
to dispose of the land as his own, and in the written
acceptance of service in the Beaurmond suit he desig-
nated it as his.

It is true McKelvey was determined the children of
his first wife should have the land, but they could ob-
tain it only under certain well-understood conditions.
A surviving wife takes one-half in value of all real
estate owned by her husband during his lifetime, of
which she has made no conveyance, which has not been
sold under execution or other judicial sale, and, if a
non-resident, of which the husband has made no con-
veyance. (Gen. Stat. 1901, § 2510.) An abuse of the
machinery of the law resulting in a fraudulent judicial
sale is no sale so far as the party defrauded is con-
cerned. The pretended sale to Doctor Bell vested no
title in him as against the plaintiff. Doctor Bell had
nothing which he could effectually convey, and the de-
fendant obtained nothing legally defensible from him.
The only other way the plaintiff could be deprived of
her interest was through a conveyance made by her
husband. The statute does not recognize parol gifts of
real estate. To do so would expose a widow to the peril
of fraudulent claims, provable by mere word of mouth,
trumped up after the husband's death. A husband
may, in good faith, lawfully make a gift of land owned
by him in this state without defrauding his wife, if
she has never resided here; but to make it effective to
bar her statutory right accruing after his death he
must consummate the gift by a conveyance, and the
grantee must not be guilty of actual fraud in obtaining
it. The case of *Small v. Small,* 56 Kan. 1, 42 Pac. 323,
30 L. R. A. 243, 54 Am. St. Rep. 581, cited by the de-
fendant, confirms this view instead of establishing the
contrary.

The judgment of the district court is reversed. The district court is directed to strike from the findings of fact conclusions of fact inconsistent with those drawn by this court, and to render judgment in favor of the plaintiff and the cross-petitioner, Pickering, upon the findings of fact as modified.