No. 19,007.

EMALINE D. POOLE, as an Individual and as Administratrix, etc., *Appellee*, v. JOHN POOLE et al., *Appellants*.

SYLLABUS BY THE COURT.

1. GIFTS—*Personal Property of Husband—Right of Disposition.* The general rule is that the law has placed no restriction or limitation on the husband's right to make such disposition of his personal property during his lifetime as he may elect.

2. GIFTS—*Colorable Gifts by Husband—Interest in Property Reserved— Invalid as against Widow.* Where the transfer or gift is colorable and there is a voluntary transfer or conveyance by which the husband reserves to himself an interest in or a power to dispose of the property, it may be declared void as against the widow and she may participate in its distribution upon the theory that the title still remained in the husband at his death.

3. GIFTS—*Binding upon Grantor—Binding upon His Heirs.* A widow sued as an heir of her deceased husband to set aside gifts and transfers of personal property made by him to the defendants, who are his sons by a former marriage. The transfers were made without the wife's knowledge, when the husband was 83 years of age and possessed of no other property, and immediately following the dismissal of an action brought by her for separate maintenance, that action having been settled upon his conveying to her certain real estate and agreeing to pay her a monthly allowance. The court found that he made the gifts and transfers to his sons in anticipation that he would not live long and to prevent the plaintiff from inheriting a share in the property as his widow, and in the further anticipation of the probability that the resumption of the marriage relation with plaintiff would not last long or be permanent and that she might separate from him and bring another action for alimony or divorce, and to defeat her right to a division of his property, *held*, following *Small v. Small*, 56 Kan. 1, 42 Pac. 323, 30 L. R. A. 243, 54 Am. St. Rep. 581, that the gifts to the sons not being colorable but absolute transfers of the title to the property, binding upon the grantor, are binding upon the heirs, and can not be attacked by the widow as made in bad faith because of the intent thereby to deprive her of an interest in the property either as wife or widow.

4. NOTE TAKEN PAYABLE TO ESTATE—*May be Disposed of.* Where a person takes a note payable to his estate he does not thereby deprive himself of the right to dispose of it during his lifetime.

5. EVIDENCE—*Transactions with Persons Since Deceased.* The incompetency of a witness to testify concerning communications or transactions had with a person since deceased is waived by the objecting

party showing on cross-examination the fact that such a communication or transaction occurred.

Appeal from Geary district court; ROSWELL L. KING, judge. Opinion filed July 10, 1915. Reversed.

*John E. Hessin,* of Manhattan, and *J. V. Humphrey,* of Junction City, for the appellants.

*Lee Monroe,* of Topeka, and *W. S. Roark,* of Junction City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: This suit was brought by Emaline D. Poole as administratrix of the estate of her deceased husband, William D. Poole, and in her own right as his widow and heir at law. The defendants are the four sons of the deceased. The plaintiff seeks to cancel certain releases, transfers and surrenders of property made by William D. Poole in his lifetime to the defendants, and the prayer of the petition asked for judgment in her own right for the sum of $8000 and interest upon a note executed by the defendants to William D. Poole, and for the foreclosure of a mortgage securing the note.

In addition to the general denial the answer pleaded a written release of the note and mortgage by William D. Poole in his lifetime and denied that the defendants had in their possession or control any property belonging to their father at the time of his death. The court made findings of fact in substance as follows:

1. In 1903 William D. Poole was a widower and owned 2400 acres of farm land in Geary county where he resided, and also owned about 200 head of cattle. On March 26, 1903, he conveyed 843 acres of the land to his four sons, reserving a life estate to himself, and at the same time conveyed to them the balance of the 2400 acres without any reservation. On the same date the sons gave him their note by which they promised at his death to pay to his estate the sum of $8000 with eight per cent interest per annum from maturity. The note was secured by a mortgage upon the 843 acres of land in which he had reserved the life estate.

2. In May, 1904, William D. Poole turned over to his sons, the defendants, about 200 head of cattle under an oral agree-

ment by which the sons at the end of five years were to turn back to him cattle of like kind or value, and on the same day he rented to his sons the 843 acres of land subject to his use of the homestead and dwelling house thereon, in consideration of which the sons agreed to pay him thereafter an annual rental of $1630. The sons were partners and carried on a farming and stock business under the name of Poole Brothers and continued in this during all the times mentioned in the findings.

3. In October, 1904, when William D. Poole was seventy-six years of age and the plaintiff was fifty-four years of age, they were married, the plaintiff at the time having full knowledge of the transfer and conveyance of the property mentioned in findings 1 and 2.

4. In May, 1907, William D. Poole gave to his sons all his interest in the 200 head of cattle and released them from the payment of the annual rent for the 843 acres of land, in consideration of which the sons agreed to pay him from time to time such sums of money as he should require or ask for, and under this arrangement the sons paid him at different times from March, 1910, to May, 1911, sums aggregating $3485.

5. In November, 1910, William D. Poole and his wife went to California for the benefit of his health and remained there about nine months.

6. While in California they had domestic troubles and separated and the wife brought suit there for alimony and separate maintenance, claiming in the action that he owned the $8000 note and mortgage and five shares of stock in a bank at Manhattan and other property in Geary county, Kansas. The old gentleman telegraphed for his youngest son, Grover, to come to him, and in response the son went to California and negotiated a settlement with the plaintiff of the suit for alimony. In the settlement William D. Poole conveyed to her four unimproved lots in Junction City of the value of $1200 or $1300, and agreed to pay her $25 a month for her use and benefit and to pay the taxes on the Junction City property, and also paid her attorney's fees in the action amounting to $250. The action was then dismissed and the parties resumed their relations as husband and wife and shortly thereafter returned to Kansas. The court expressly found that the plaintiff in-

Poole v. Poole.

sisted in the settlement of the California case that the note for the $8000 should be transferred to her for her security and protection, but that this was not acceded to by William D. Poole and that it was not included in the settlement.

7. Soon after the settlement of the suit for alimony, and while William D. Poole and his son Grover were still in California, William D. Poole secretly, without the knowledge of the wife, transferred and delivered the certificate for the five shares of bank stock to Grover Poole in the name of and for the use and benefit of Poole Brothers, and at the same time delivered to him a written release of the $8000 note secured by the mortgage on the 843 acres of land. The shares of bank stock and the mortgage in question constituted all the property that William D. Poole owned or had left. This transfer, at the time he was eighty-three years of age and in poor health, was made without consideration and in contemplation and expectation on his part, and on the part of his son Grover, that the old gentleman would not live long and that his wife would probably survive him and be one of the heirs to whatever property he owned at his death, and were also made by William D. Poole in consideration of the probability that the resumption of the marriage relation with plaintiff would not last long or be permanent, and that she might separate from him and bring another action for alimony, or divorce and alimony, for which reasons the transfer of the bank stock and the release of the mortgage were made in bad faith by William D. Poole and were accepted by Grover Poole on behalf of the defendants in order to defeat the plaintiff's right as an heir to this property in case she survived him, or to defeat her right to a division of this property in case another suit should be brought by her for alimony, or divorce and alimony.

8. The note and mortgage having been lost, were not delivered to the defendants. The plaintiff offered testimony tending to show that the signature of William D. Poole to the release was a forgery. On this issue the court found the signature to be genuine.

9. The transfer of the property mentioned in finding No. 1, and the gift of the cattle and also the release of Poole Brothers from payment of rent on the 843 acres were all made in good faith at the time when there was no difficulty or domestic

trouble between the plaintiff and William D. Poole, and with no intention to defraud the plaintiff.

10. After the parties returned from California to Kansas the plaintiff again separated from her husband and brought an action for divorce and alimony, which action was never tried but abated by the death of the husband.

11. William D. Poole died November 24, 1911, intestate, the few debts that he owed being fully paid by his sons. He left surviving him as his heirs the parties to this suit.

12. A half interest in the amount due on the $8000 note is $4487.08, and a half interest in the value of the bank stock is $545.64.

13. There was no completed gift, transfer or delivery of the $8000 note by William D. Poole to the plaintiff.

14. Defendants John, William and Bryant Poole, ratified all that their brother Grover did in taking and receiving the written release and transfer of the bank stock.

As conclusions of law the court found that the plaintiff has no interest in the 2400 acres of land nor in the cattle and rents; but that she is entitled as an heir to a half interest in the note and mortgage and the same interest in the bank stock. She was therefore given judgment against defendants for one-half of the amount due on the note, for the foreclosure of the mortgage, and for one-half the value of the bank stock.

There are two appeals, neither side being satisfied with the judgment. The defendants' main contention, briefly summarized, is that the plaintiff's suit is grounded upon her rights under the statute of descents and distributions; that since she is not a creditor of the deceased her suit must fail because as an heir she is only entitled to one-half the property belonging to the husband at the time of his death; that he had the right in his lifetime to dispose of it as he pleased since it belonged to him.

The findings of fact exclude the idea that the gifts were "colorable," and, on the contrary, show an actual transfer of the title and ownership of the property to the sons. In *Small v. Small*, 56 Kan. 1, 42 Pac. 323, it was held that the statute of descents and distributions is in no respect a limitation on the right of the husband while living to dispose of his personal property by gift in accordance with his wishes and with the

express intent of depriving his widow of any interest therein as an heir. The syllabus in that case reads:

"Subject to certain limitations not applicable to this case, and as against any post-mortem claim of his widow, a married man, in Illinois or in Kansas, may, during coverture, give away to his children absolutely the bulk of his property, when the known effect of the gift will be to deprive the widow of the fair share of the property which otherwise would have fallen to her."

The case of *Small v. Small,* supra, is reported with annotations in 30 L. R. A. 243, and in 54 Am. St. Rep. 581. The general rule is that the law has placed no restriction or limitation on the husband's right to make such disposition of his personal property during his lifetime as he may elect. In *Padfield v. Padfield et al.,* 78 Ill. 16, it was said:

"To hold that a *feme covert* has a vested interest in her husband's personal estate, that he is unable to divest in his lifetime, would be disastrous in the extreme to trade and commerce." (p. 20.)

The general rule is not recognized, however, in some jurisdictions. The decisions of some of the courts are based upon statutes giving the wife dower in personal property. (See cases cited in Note, 10 Ann. Cas. 1053.) Where the transfer or gift is merely colorable and there is a voluntary transfer or conveyance by which the husband reserves to himself an interest in or a power to dispose of the property, it may be declared void as against the widow and she may participate in its distribution upon the theory that the title still remained in the husband. (*Small v. Small,* supra; *Padfield v. Padfield et al.,* supra; *Thayer v. Thayer et al.,* 14 Vt. 107; *Cameron v. Cameron et al.,* 10 Smed. & M. (18 Miss.) 394, 48 Am. Dec. 759; *Lightfoot's Executors and others v. Colgin and Wife,* 5 Munf. (Va.) 42; *Stewart v. Stewart,* 5 Conn. 317; *Dunnock v. Dunnock,* 3 Md. Ch. 140; *Jones v. Somerville,* 78 Miss. 269, 28 South. 940, 84 Am. St. Rep. 627.)

At the time the note and mortgage and the bank stock were transferred to the sons the plaintiff and William D. Poole had settled their domestic difficulties, and so far as the evidence shows lived together amicably for several months thereafter. She had dismissed her action for separate maintenance and by the settlement had obtained from her husband valuable property rights and an agreement for the payment of a monthly allowance. Aside from the facts that they had had domestic

difficulties and that she had brought her suit in California there was no evidence, at least none is set forth in the abstracts, tending to show that either the husband or the sons anticipated that she would begin another suit for support or for divorce and alimony. It must be said, therefore, that the evidence to sustain the finding that the gifts were made in anticipation that she would begin another suit is very slight, and of course the burden of proof was upon plaintiff to show that the transfers were fraudulent.

We are not left in any doubt as to the exact theory upon which the trial court proceeded in arriving at the conclusion that the transfers should be set aside. The written opinion of the court is set forth in the abstract, from which it appears that the court held the transfers fraudulent because their purpose was to defeat the marital rights of the wife and to deprive her of rights as an heir. The court in the opinion stated the law to be as declared in 14 Cyc. 68, under the title "Descents and Distributions," as follows:

"A sale, gift, or other transfer of personal property, however, made fraudulently for the mere purpose of depriving the wife of her distributive share is invalid as to her."

In the same paragraph in Cyc. it is stated that:

"As to personal property, the rule is that the husband may deprive his wife of her distributive share by a sale, gift, or other transfer made in good faith during his lifetime."

Then follows the excerpt quoted by the court. In the opinion the trial court further said that the case of *Small v. Small* "is not at variance with the authorities above referred to for the decision in the Small case states that the transfers in question there were made in good faith." The cases cited in Note 37 (14 Cyc. 68) in support of the text relied upon by the trial court are directly opposed to *Small v. Small* so far as they hold that the intent to deprive the wife of her distributive share is of itself a fraud upon her. That was the purpose of the husband in the Small case. The "good faith" to which Chief Justice Martin refers in the Small case was not affected in the slightest degree by the fact that the husband made the gifts with the secret intent to deprive the wife of her distributive share. It was in "good faith" notwithstanding such intent because he actually parted with his title; he did not reserve an interest in the property

in himself; in other words, the transfer was not colorable. The cases which are fully in accord with *Small v. Small* are cited in the same page of 14 Cyc. (68) under note 36, from the courts of a dozen states which have held that, although the transfer is made to defeat the rights of the wife, it is not fraudulent if a *bona fide* transfer is made for that purpose. Among the decisions cited in the note are *Padfield v. Padfield et al.,* 78 Ill. 16, and *Richards v. Richards et als.,* 11 Hump. (30 Tenn.) 429. In the Tennessee case the husband gave his property to his children for the purpose of excluding his widow from any share therein and she was held to be without remedy.

Counsel for plaintiff cite a number of cases where in actions brought by the wife for alimony courts have set aside transfers of property made by the husband for the purpose of defeating her action, and in some of the cases cited the transfers were made prior to the commencement of any suit by her. We have examined most of these cases. In some of them the court found that the transfers were fraudulent because the husband retained an interest in the property. (*Platner v. Platner et al.,* 66 Iowa, 378, 23 N. W. 764.) In others the husband had obtained conveyances of his wife's property which he subsequently conveyed fraudulently to a third person. In an action afterwards brought by her for divorce and alimony the transfers were set aside as fraudulent. All of the cases cited were suits where the wife sued the husband. We have found no cases and have been referred to none where the widow claiming under the statute of descents and distributions has been permitted to defeat an actual transfer of personal property made by the husband in his lifetime, on the ground that his purpose was to defeat her marital rights, or to defeat her right to share in the property as his widow and heir. The *jus disponendi,* which is an incident to the ownership of personal property, is jealously guarded by the courts because it lies at the foundation of trade and commercial transactions; and to restrict or cut down this inherent right of the owner in order to accomplish an equitable division of property between the widow and other heirs is not in accord with sound public policy. (*Small v. Small,* 56 Kan. 1, 42 Pac. 323; *Richards v. Richards et als.,* supra.)

It may be conceded that the trial court arrived at a judgment

which results in an equitable division between the widow and sons of the property in controversy if it belonged to the deceased at the time of his death. But this is one of the cases where the maxim that "equity follows the law," a maxim said to be quite restricted in scope, must be held to apply. It presents a situation where the rights of the parties are clearly defined and established by law, first, by the statute of descents and distributions under which the plaintiff seeks to recover, and second, by the settled rule of law upon which rests the decision in *Small v. Small,* supra.

"Wherever the rights or the situation of the parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation, but in all such instances the maxim *equitas sequitur legem* is strictly applicable." (*Magniac et al v. Thomson,* 15 How. [56 U. S.] 281, 299.)

The opinion in *Small v. Small* quotes with approval (p. 16) the following statement from *Williams v. Williams,* 40 Fed. 521:

"Of course, the sale or gift must be absolute and *bona fide,* and not colorable only. And if the sale or gift would bind the grantor, it would bind his heirs." (p. 522.)

The findings show conclusively that there was an actual gift of the cattle to the sons accompanied by delivery; that there was a written release of the note and mortgage; that these transfers were not "colorable." They were *bona fide* transfers. That they were secret or that knowledge of them was purposely withheld from the wife or that the sons paid no consideration can make no difference. (*Small v. Small,* 56 Kan. 1, 42 Pac. 323.)

Reliance is placed by plaintiff upon *McKelvey v. McKelvey,* 79 Kan. 82, 99 Pac. 238, but that case is not in point. The property there was not personalty but real estate, which the husband attempted fraudulently to dispose of by a judicial sale upon a collusive judgment obtained against him, intending, however, to dispose of the land in a way that he could get it back. The transaction was colorable and not an actual one, besides being fraudulent for other reasons.

It must be held, therefore, that the court erred in awarding plaintiff a widow's share in the note, the mortgage securing it, and the bank stock.

In the cross-appeal of the plaintiff she contends that she is

entitled to recover her interest as an heir in the value of the cattle and the rentals of the 843 acres of land; that there was no competent evidence to sustain the finding that William D. Poole released the sons from their obligation to pay rent or that he made them a gift of his interest in the cattle. This contention is based upon the claim that the court permitted the sons to testify concerning transactions with a deceased person. The trial court followed the correct rule in permitting the witnesses to testify on the express ground that in the cross-examination plaintiff had brought out the fact that there was some kind of an agreement between the father and sons, and that this opened the door and permitted defendants to show what the agreement was. (*Niccolls v. Esterly*, 16 Kan. 32; *Plowman v. Nicholson*, 81 Kan. 210, 105 Pac. 692.)

Evidence of the agreement having been properly admitted, it is of little consequence whether the other testimony objected to was admissible or not, since the trial was by the court. However, the testimony of the sons denying that they had in their possession or control any property or money belonging to the deceased at his death negatives rather than affirms that there was a communication or transaction with the father in his lifetime. (*Murphy v. Hindman*, 58 Kan. 184, 48 Pac. 850; *Gaston v. Gaston*, 83 Kan. 215, 109 Pac. 777; *Kerr v. Kerr*, 85 Kan. 460, 461, 116 Pac. 880; *Coblentz v. Putifer*, 87 Kan. 719, 125 Pac. 30.)

Nor is this testimony open to the objection that it was merely a conclusion of law; it involved at most a mixed question of fact and law.

There is a further contention that the case must be distinguished from *Small v. Small*, 56 Kan. 1, 42 Pac. 323, because it is said there was an agreement, tacit and expressed, both prior and subsequent to the marriage, that plaintiff should receive one-half this property at his death in compensation for the unusual care and attention he required, and a further express agreement of the same kind as an inducement to the dismissal of the California case. The answer to this is that the findings which the court made exclude the idea that there was any such understanding or agreement. The fact is, the court found against the plaintiff's contentions in this respect. There is an express finding that William D. Poole never acceded to

her request that the note and mortgage should be included in the settlement of that action. We find no substantial reason for setting aside the findings. The plaintiff makes another contention rather inconsistent with the last mentioned, namely, that the note having been made payable to the estate of William D. Poole, it was beyond his power to dispose of it. None of the many cases cited supports the contention. Some of them are cases where a person in his lifetime took a note payable direct to his heirs after his decease, or to some third person named. Some of the others are cases where the note was not executed until after the death of the person owning the estate, and was made payable direct to the administrator or to the estate. All that the court decided was that the administrator could maintain an action to recover on the note. We think that there is no force in the contention that William D. Poole constituted himself a trustee for his heirs when he took the note payable to his estate. It was executed eighteen months before he married the plaintiff, and at a time when the only heirs in being were the defendants. As suggested, the contention of the plaintiff is directly opposed to her claim that she is entitled to a share in the note by reason of an agreement made long afterwards. We hold, however, that where a person takes a note payable to his estate he does not thereby deprive himself of the right to dispose of it during his lifetime by accepting payment or by releasing and discharging the obligators. In this case the note was delivered to William D. Poole and remained in his possession and control, so far as the findings show, until it became lost or mislaid.

It follows from what has been said that plaintiff's contentions can not be sustained, and that the judgment is reversed and the cause remanded with directions to render judgment in favor of defendants.

BURCH, J., and MASON, J., dissenting.