MARY M. FLANIGAN *et al.* v. JOSEPH WATERS.

No. 8478.

1. PAROL GIFT OF LAND — *Enforcement.* Equity protects and enforces a parol gift equally with a parol contract of the sale of land where possession is taken in pursuance of the gift, improvements made, and the donee changes his situation or condition upon the faith of the gift.

2. ——— *Statute of Frauds.* To take the case out of the operation of the statute of frauds, the gift must be shown by clear and satisfactory proof; and whether a gift was actually made is, like any other fact, for the determination of the jury.

3. ——— *Contingent Interest of Donor's Wife.* Where the donor, a married man, purchased land with the purpose of giving it to the donee, taking the legal title in his own name, and the donee, who resided in another state, did not arrive or take possession of the land in pursuance of the gift until several weeks after the purchase of the land, *held,* that the wife of the donor acquired a contingent interest therein, and if there has been no judicial sale of the land, and it is not necessary for the payment of debts, and she has made no conveyance of the same, nor consented to the gift, she will be entitled to a one-half interest in the same, if she survives her husband.

*Error from Geary District Court.*
*Hon. James Humphrey, Judge.*

Reversed and Remanded.          Opinion Filed June 6, 1896.

The opinion of the court was delivered by

Johnston, J. : This was an action by the heirs of
Moses Waters, deceased, to recover from Joseph Waters
the possession of 240 acres of land in Geary county.
Joseph Waters has been in the possession of the land
since 1884, and claims that he received it as a gift
from his brother, Moses Waters, during his lifetime.
At the trial the testimony tended to show that in 1883
Moses Waters was post sutler at Fort Riley, and had
considerable means, while his brother Joseph, who
then resided at Amsterdam, N. Y., had little if any
property.   He and several of his children had employ-
ment at small wages in a carpet factory at Amster-
dam.   Moses visited his brother's family in New York
in 1883, and, learning of their condition, suggested
that they remove to Kansas.   Afterward, in a letter,
he advised his brother that he had purchased a farm
for him in Kansas, and urged him to come at once
and take possession of it.   Another letter of like pur-
port was sent urging them to come right away and
take the farm which he had bought for them ; that
it was the last chance he would give them.   These
letters were written by Mary, the wife of Moses Wat-
ers, who brings this action under the name of Mary
M. Flanigan.   Within a few weeks Joseph Waters
came to Kansas, and shortly afterward he was fol-
lowed by his family, when they were put in posses-
sion of the farm, which they have ever since retained.
At the same time Moses Waters purchased and gave
to Joseph implements sufficient to run the farm.

After taking possession of the land, Joseph Waters made some improvements upon a house that was standing thereon, built two or three miles of wire fence, built a stable, corn-crib, chicken-house, grubbed out and broke up additional land, and planted some trees, but the improvements made were not of great value. On June 26, 1889, Moses Waters died intestate, and left surviving him his widow, Mary M. Waters, and six minor children. Soon afterward, the widow intermarried with one Flanigan, and she brings this action for herself, and as next friend for the children. Upon the testimony the jury found in favor of the defendant, holding in effect that Moses Waters had bought the land for his brother Joseph, and gave it to him; that Joseph entered into possession of it in pursuance of the gift, and had improved it and made it his home. It is earnestly contended that the testimony is insufficient to sustain the finding of the jury. It appears that the land was purchased several weeks before Joseph Waters arrived in Kansas, and the title to the same was placed in Moses Waters, in whose name it remained until the time of his death.

As the gift, if any, was in parol, it should be shown by clear and satisfactory proof. From the testimony, it appears that Moses Waters was abundantly able to make the gift, and further, that he was anxious to have Joseph and his family established in a home of their own in Kansas. He proposed to give him a farm if he would remove to Kansas. Before purchasing the land, he said it was his purpose to buy a farm for his brother, and when he was negotiating for one he stated that he was going to give it to his brother, and ever afterward spoke of it as the land he had given to his brother. The evidence is abundant that he induced his brother to leave his place in New

York by the offer of this home, that upon coming here he delivered it to him as a gift, and that, in pursuance of the gift, his brother took possession and made improvements. Since that time Joseph Waters has had exclusive possession of the farm, and appears to have exercised full ownership over it. During his lifetime Moses Waters repeatedly asserted that he had given the land to his brother, and only held the deed in his own name because his brother's wife was not content to live in Kansas. and that he feared he might sell it and return to New York. Statements of this character and admissions that he had given the land to his brother were so frequently made and to so many different persons that little doubt can remain as to his purpose. The matter of the gift was talked over with most of his neighbors and friends, and evidently he desired all to understand that out. of his abundant means he gave his brother and family a home, so that they, too, might enjoy some of the comforts of life. We cannot suppose that the proposition to give, and the delivery of exclusive possession, were made to deceive his brother, or that the numerous statements made to his neighbors and friends in respect to the gift were misrepresentations. Equity protects a parol gift of land equally with the parol contract of sale where possession has been taken in pursuance of the gift, improvements made, or where the donee has been induced to change his situation or condition upon the faith of the gift. (*Galbraith v. Galbraith*, 5 Kan. 402; Thornton, Gifts, §§ 378–383.) Whether a gift was made is, like any other fact, for the determination of the jury. To take the case out of the operation of the statute of frauds, the gift must be shown by clear and convincing proof. The testimony in this case, we think, meets the re-

1. Equity protects a parol gift of land.

quirements of this strict rule of law. That the gift was made by Moses Waters, accepted by his brother, and that the acts done on the faith of the gift would make it inequitable to avoid the same, has been established by full, credible, and satisfactory evidence.

One other question remains for decision. When the land was purchased the legal title, as we have seen, was placed in Moses Waters. The instrument of conveyance was executed and recorded several weeks before his brother, Joseph Waters, reached Kansas, and before he was placed in possession of the land. It is contended that the gift did not become effective until possession was taken by the donee, and that, in the time intervening between the purchase of the land and the acceptance of the gift, Moses Waters was the legal and equitable owner of the land. It is not claimed that his wife made any conveyance of this land, or of any interest therein, and it is urged that there is no proof showing that she consented to or joined in the gift that was made. The statute provides that

"one-half in value of all the real estate in which the husband, at any time during marriage, has a legal or equitable interest, which has not been sold on execution or other judicial sale and not necessary for the payment of debts, and of which the wife has made no conveyance, shall, under the direction of the probate court, be set apart by the executor as her property, in fee simple, upon the death of the husband, if she survives him." ( ¶ 2599, Gen. Stat. 1889.)

While the wife wrote the letters proposing to give Joseph Waters the land if he would come to Kansas, and informing him that it had been purchased for him, there is no testimony that she expressly surrendered her interest in the land or that she had united with her husband in making the gift. Any interest which she had in the land may have been given under

2 Donor's wife must unite in making the gift.

like conditions and in the same manner that the gift was made by her husband. It may be shown by statements made by her or other acts recognizing that the gift was complete, and that Joseph Waters was entitled to exclusive possession and complete ownership. The court is of opinion that she had an interest in the land, under the statute, which would remain in her until it was surrendered by gift, conveyance, or other transfer.

In the opinion of the writer, the wife of Moses Waters never acquired any interest in the land, and a conveyance or her consent to the gift was not essential to the vesting of the title in Joseph Waters. The land was originally purchased by Moses for Joseph, and not for himself, and this was done with her knowledge. It being his unquestioned purpose to give the land to his brother, he converted himself into a trustee, and from the first simply held the naked legal title for the benefit of his brother. The trust was created when the purchase was made, and is just as effective as if a stranger had been made the trustee. Holding the land only in trust, his wife acquired no interest in the same, and therefore her consent to the gift was not essential. (*Adams v. Adams*, 21 Wall. 186; Lewin, Trusts, 152; Perry, Trusts, § 38; Thornton, Gifts, § 413.)

A majority of the court hold to the view that the trial court, in charging the jury, failed to recognize the interest acquired by the wife of Moses Waters, and that the testimony in the record fails to show that she has parted with that interest. For these reasons the judgment of the district court will be reversed, and the cause remanded for a new trial.

MARTIN, C. J., and ALLEN, J., concurring.

JOHNSTON, J., dissenting.