McKelvey v. McKelvey.

ANNA K. MCKELVEY v. JOHN A. MCKELVEY.

No. 14,910  (89 Pac. 663.)

SYLLABUS BY THE COURT.

1. JUDGMENTS—*Fraud—Husband and Non-resident Wife.* A husband cannot deprive his non-resident wife of her interest in his real estate in Kansas by fraudulently procuring a judgment to be rendered against him, under which he causes the land to be sold on execution and the title to be passed to a party to the fraud.

2. HUSBAND AND WIFE—*Interest of Wife—Ejectment by Widow—Heirs Estopped.* The interest given by statute to a wife in the real estate of her deceased husband is not an inheritance, and she may maintain ejectment therefor against one

in possession whose title thereto was acquired by a fraudulent conspiracy entered into with the husband during his lifetime to defraud the wife of such interest, notwithstanding the heirs of the husband could not recover the real estate.

3. ——— *Collusive Judgment Held Void—Limitation of Wife's Right to Bring Action.* Where a husband and his son enter into a conspiracy to defraud the wife of her interest in the real estate of her husband in Kansas, and in furtherance of such conspiracy the husband executes a promissory note without consideration to a fictitious person, upon which they cause a judgment to be rendered, the land sold thereunder, and the title thereto passed to the son, the wife may maintain ejectment to recover her interest in such land against the son at any time within the statutory period of limitations after the death of the husband.

Error from Johnson district court; WINFIELD H. SHELDON, judge. Opinion filed March 9, 1907. Reversed.

### STATEMENT.

THIS was a suit commenced December 26, 1904, for the partition of the northeast quarter of section 8, township 14, range 24 east, in Johnson county, for rents and profits, and to set aside and hold for naught certain execution proceedings under which the defendant claimed title to the land in controversy.

The undisputed facts are that Anna K. McKelvey, the plaintiff, is the widow of John C. McKelvey, deceased; that while the marriage relation existed John C. McKelvey was the owner of the land in controversy; that they lived in Illinois, and prior to the death of John C. McKelvey, in August, 1903, the plaintiff had never been in the state of Kansas; that John A. McKelvey, the defendant, is the son of John C. McKelvey by a former wife; and that he went into the possession of this land in 1883, has been in possession since that date, and was in possession when this suit was commenced.

The petition avers that John C. McKelvey and the defendant came to Kansas in 1883; that they and James Bell fraudulently and collusively entered into a con-

spiracy to defraud the plaintiff out of her interest in this real estate, and in furtherance of such conspiracy John C. McKelvey signed a promissory note, without consideration, payable to Agnus Bauermond, a fictitious person, for the sum of $3115.91, and delivered it to James Bell, with instructions to him to institute an action thereon in the name of Bauermond, and obtain judgment, issue execution, sell the land in controversy, purchase it at the execution sale, and after having acquired title thereto convey the same by deed to the defendant herein and his brother and sister; that such proceedings were fraudulently and collusively instituted and prosecuted to a final determination; that the land was sold thereunder and purchased by Bell, and thereafter conveyed to the aforesaid children of John C. McKelvey; that there was no consideration for the note upon which the judgment was entered; that Bell paid no consideration for the land at the execution sale; and that Bell's pretended grantees did not pay him any consideration for the deed he executed to them.

To this petition the defendant filed a general denial, and pleaded the judgment, the execution sale of the land thereunder to Bell, the conveyance from Bell to himself and brother and sister, good faith and consideration, the subsequent acquisition of the titles from his brother and sister, his open, notorious and exclusive possession under claim of ownership for more than fifteen years, the making of lasting and valuable improvements, and the statute of limitations.

The court made special findings of fact and conclusions of law, and rendered judgment for the defendant.

*I. O. Pickering,* and *H. Clay Horner,* for plaintiff in error.

*Ogg & Scott,* for defendant in error.

The opinion of the court was delivered by

GREENE, J.: Before examining the errors assigned it should be ascertained whether the plaintiff ever had any interest in the land in controversy, and, if so, the nature of such interest, and whether it was barred by the statute of limitations. If the facts stated in her petition disclose that she never had any interest in the land, or that her cause of action was barred by the statute of limitations, no errors committed on the trial could be prejudicial to her.

Upon the first question here suggested it is contended that under our statute a non-resident wife has no interest in the real estate of her husband situated in Kansas, and therefore that it was impossible for plaintiff's husband and the defendant to commit a fraud upon her right by any act with reference to such real estate. Our statute provides:

"One-half in value of all the real estate in which the husband, at any time during the marriage, had a legal or equitable interest, which has not been sold on execution or other judicial sale, and not necessary for the payment of debts, and of which the wife has made no conveyance, shall, under the direction of the probate court, be set apart by the executor as her property, in fee simple, upon the death of the husband, if she survives him; provided, that the wife shall not be entitled to any interest, under the provisions of this section, in any land to which the husband has made a conveyance, when the wife, at the time of the conveyance, is not or never has been a resident of this state." (Gen. Stat. 1901, § 2510.)

This statute does not discriminate against a non-resident wife in favor of a resident wife as to the interest the former shall have in the real estate of her husband situated in Kansas. It excludes her from any interest in any lands owned by the husband of which he has made a conveyance, when the wife at the time of the conveyance is not or never has been a resident of the state, and it excludes both the resident and non-

resident wife from any interest in any lands which
have been sold on execution or other judicial sale. But
as to lands not thus disposed of, and not necessary for
the payment of his debts at the time of his death, the
interest of the non-resident wife is equal to that of the
resident wife. The interest which the statute gives
to the wife in the real estate of her husband during his
life is not easily classified or defined. Because of this
difficulty it has been thought by some to be in its nature
an inheritance, and such a suggestion may be found
in some of the opinions of this court. But practically
the entire trend of the decisions of this court is to
treat it as a present existing interest—one which the
wife may protect by an appropriate action during the
life of the husband and against his wrongful acts.
(*Busenbark v. Busenbark*, 33 Kan. 572, 7 Pac. 245;
*Flanigan v. Waters*, 57 Kan. 18, 45 Pac. 56.)

The wife's interest does not depend for its inception
upon the death of the husband, as an inheritance would,
but springs into existence by operation of law upon a
concurrence of seizin and the marriage relation. This
interest, equal to one-half in value of all the real estate
in which the husband at any time during the marriage
had a legal or equitable interest, which has not been
sold on execution or other judicial sale, and which the
husband has not conveyed at a time when his wife was
not or never had been a resident of this state, and not
necessary for the payment of his debts, upon the death
of the husband shall, under the direction of the probate
court, be set apart by the executor as her property.
And the only control exercised by the probate court or
the executor or administrator over the wife's interest
in the real estate owned by her husband at the time of
his death is to ascertain its value and set it apart to
the widow—not as an heir of her deceased husband,
but as her separate and absolute property in fee simple.
And since this interest does not come to her by inher-
itance it is not a bar to her recovery that her husband

parted with his title in such a fraudulent manner that neither he nor his heirs can recover it.

This section, as observed, excludes the wife from any interest in lands which have been sold on execution or other judicial sale. It is contended that this land was sold under execution sale and that the defendant holds his title through such sale. The statute contemplates only such execution and judicial sales as have become necessary for the payment of the debts of the husband. It does not contemplate collusive and fraudulent execution or judicial sales to which the husband is a party and which have no other object than to devest the husband of his title for the fraudulent purpose of depriving the wife of her interest in such property. All fraudulent judicial or execution sales are void as between one not a party but having a vested interest in the *res* and those in collusion with or participating in the fraudulent transaction. The title to the real estate in controversy is claimed by one who it is alleged was a party to the fraudulent proceedings which devested the title of John C. McKelvey. If the proceedings were collusive and fraudulent, such a sale did not have the effect, at least as between the plaintiff and those who were parties to the fraud, of defeating her interest in the land.

The principal question litigated in the trial court was whether the judgment and the proceedings by means of which the title of John C. McKelvey to the lands in controversy became devested and the title thereto vested in the defendant, John A. McKelvey, were collusive and fraudulent. The court made special findings that they were not.

Upon the trial the plaintiff, for the purpose of upholding her contention that such proceedings were fraudulent, and wanting in consideration, while the defendant was upon the witness-stand and under cross-examination, asked him this question:

"I will ask you to state to the court whether when

that deed [being the deed from Bell to the defendant] was delivered to you on the 3d day of January, 1884, you paid to Doctor Bell the sum of $8000?"

An objection was sustained to this question. This is alleged as error. It was an attempt to elicit information upon one of the controverted points—the want of any consideration passing from the defendant to Bell for the deed to the land. The deed purports to have been executed for a consideration of $8000, and the ruling of the court excluded the plaintiff from inquiring into the actual consideration. This error appears more pronounced in view of the evidence of the defendant that when he came to Kansas, in 1883, less than a year before the deed was executed, all the property he owned was a one-half interest in a butcher shop, the total value of which was about $350, and the finding of the court "that when John A. McKelvey came to Kansas in 1883 he did not have to exceed $150, and that he has not received any money or property by inheritance from any one." Under the pleadings the plaintiff should have been granted the greatest liberty in the examination and cross-examination of all the parties alleged to have been connected with the passing of this title, which she claimed was obtained by collusion and fraud. The ruling of the court deprived her of a substantial right.

While a decision of the question raised by the second defense is not necessary to the present disposition of the case in this court, it will become important in a retrial of the cause, and for this reason we feel called upon to pass upon it. The contention is that the defendant has for more than fifteen years been in the open, exclusive and adverse possession of the land, claiming it as his own, under color of title, and that if the plaintiff ever had any rights thereto her right of action is barred by the statute of limitations. In this contention it is assumed that the plaintiff's right of action accrued when the execution sale passed the

title from her husband. While it has been held in this state that the wife may, during the lifetime of her husband, institute some proceedings to protect her interest in her husband's real estate, as in the Busenbark case, *supra*, all remedies are not open to her during the life of her husband, and the remedy pursued by the wife in this case is one of those she was not entitled to invoke during the lifetime of her husband. Notwithstanding the interest of the wife in the real estate of her husband, during his lifetime she may not maintain ejectment or partition for such interest. It is only upon his death that her right of action in ejectment accrues to her. This suit was commenced within two years after the death of the husband; therefore, it was not barred by any statute of limitation.

.The judgment is reversed and the cause remanded.

JOHNSTON, C. J., BURCH, MASON, PORTER, GRAVES, JJ., concurring.

SMITH, J. (concurring specially) : I concur in the decision of this case for the following reasons: It is admitted that plaintiff was the wife of John C. McKelvey at and long prior to his death, and while such relation existed he was seized of the land in question and made no conveyance of it. To the claim that it was sold during his lifetime on an execution to satisfy a judgment for money rendered against him, Mrs. McKelvey offered evidence impeaching the consideration claimed to have been paid for the transfer of the land to the son, John A. McKelvey. This evidence tended to establish one circumstance in a chain which strongly indicated that the judgment was collusive, fraudulent and void. The evidence was very material, for if the judgment was void the execution was also void and the plaintiff should recover. For this error I concur in the decision.

I am unable to concur in the language of the second paragraph of the syllabus or in some statements in the

opinion.   It is said that the interest of a wife in the lands
of her husband "springs into existence by operation of
law upon a concurrence of seizin and the marriage rela-
tion."   If this be true, this suit was long ago barred
by the statute of limitations.   Coverture is no disa-
bility in this state.   A married woman may sue and be
sued in the same manner as if she were unmarried.   If
the land was sold under a void judicial proceeding, and
she had a present interest therein which was invaded,
she could and should have proceeded to have the sale
set aside within the limitation provided by law.   If,
however, as I think, her rights sprang into existence
on the death of her husband, then her action is not
barred but is timely.

The wife's right to prevent the fraudulent disposi-
tion of her husband's land is based upon her legal right
to look to it for her maintenance, which, as is shown
by the petition in the case of *Busenbark v. Busenbark,*
33 Kan. 572, 7 Pac. 245, was pleaded in that case, and
no other right appears to have been asserted nor any
other question to have been presented for decision.

The statutory right of a wife to an estate in her
husband's land is not consummated until his death.
Until then she has no right of possession and she can-
not sell it.   It can be taken from her in an action to
which she is not a party—that is, without due process
of law.   If she die before her husband no right or in-
terest therein descends to her heirs.   In all its uncer-
tainty and contingency it is entirely analogous to
dower.   As to devolving an estate it is analogous to
heirship.

"Dower is not an estate in land, vested or otherwise.
It is a right without value, unless by some modern
methods a possibility may be valued.   A possibility or
contingency is not an estate.   It may be affirmed gen-
erally, where a right is given by law, until that right
becomes vested in some way in property the law may
be changed or repealed, and the right taken away.
.  .  .   Dower does not become a vested right in the

McKelvey v. McKelvey.

wife until the death of her husband. A possibility of dower is no vested right in the estate of dower, or anything the law recognizes as property." (*Richards v. Bellingham Bay Land Co.*, 54 Fed. 209, 211, 4 C. C. A. 290.)

A married woman who survives her husband either has or has not a vested property right, prior to his death, in the land owned by him at any time during the continuance of the marriage relation. If she has such vested property right at such time, coverture being no disability, she has an immediate cause of action when such right is invaded, and may bring her action at once to repel such invasion. Since she *may* bring her action at once, she *must* bring it within the time limit provided by statute or be forever barred from the remedy.

If the wife has no vested property right in her husband's land prior to his death, she certainly is vested by the statute with such right, immediately upon his death, in all his lands which have not theretofore been alienated in some one of the manners specified in the statute; and if, by fraud or otherwise, a cloud has been cast upon her title to her interest in such lands by an apparent, not real, alienage of the same before the death of the husband, she may bring an action at any time after his death, within the statutory limitation, to remove such cloud.