No. 20,147.

ALEX B. SHULSKY, *Appellee,* v. MARY E. SHULSKY, *Appellant.*

### SYLLABUS BY THE COURT.

1. WILL—*Reference to Extrinsic Existing Deeds—Incorporated as Part of Will.* If a properly executed will incorporates in itself, by reference, a deed not so executed, the deed so referred to, if it was in existence at the time of the execution of the will and is so accurately described therein as to assure its identity, takes effect as part of the will.

2. SAME—*Will and Extrinsic Deeds—Constitute One Transaction—No Delivery of Deeds—Deeds and Will Subject to Revocation.* A will devised to each of six children of the testator a specific tract of land, each devise followed by the words, "for which a deed has already been made." At the same time the testator executed the six deeds referred to in the will, placed them in one envelope with the will, and handed the envelope to a banker with instructions to deliver the deeds at his death to the grantees, and to deposit the will in the probate court. Five years thereafter he took the papers from the bank, destroyed the will and some of the deeds, and made a new will and new deeds in place of those destroyed. He then placed the new will and the deeds in an envelope and handed them to the banker with the same directions as before. *Held,* that the deeds were parts of the will and testamentary in character; that the execution of the will and the deeds constitutes one transaction; that the intention of the testator was that the deeds should not operate until his death, and that, being parts of the will, they were subject to revocation.

Appeal from Doniphan district court; WILLIAM I. STUART, judge. Opinion filed May 6, 1916. Reversed.

*C. A. Magaw, T. M. Lillard,* and *F. E. Smith,* all of Topeka, for the appellant.

*S. M. Brewster,* of Topeka, and *J. J. Baker,* of Troy, for the appellee.

The opinion of the court was delivered by

PORTER, J.: On July 18, 1901, R. P. Shulsky, who owned a large tract of land in Doniphan county, made a will devising to each of his six children a separate piece of land. The first clause of his will devised eighty acres to the plaintiff herein, and reads as follows:

"First, I will and devise to my son, Alex B. Shulsky, the west half of the southwest quarter of section fifteen (15), township four (4) south, range nineteen (19) east, in Doniphan county, Kansas, for which a deed has already been made."

In substantially the same language, the will made provision for each of the other five children. At the same time the testator executed six deeds referred to in the will, conveying to each child the land mentioned in the will. The deeds and the will were placed in one envelope and handed by him to John Morley, a banker at Severance. On the outside of the envelope was a notation which Mr. Morley testified was in substance as follows:

"It instructed me to, shortly after I had knowledge of Mr. Shulsky's death, to hand to the parties named in these deeds, the deeds, to hand them in person to the parties named, and to mail by registered mail to the probate court of Doniphan county, Kansas, the will."

On June 27, 1906, Mr. Shulsky, the testator, called at the bank, asked for and received the envelope containing the instruments, took them away, and destroyed the deed to the plaintiff, the will and the envelope. On the same day he returned to the bank and handed to Mr. Morley an envelope which contained a new will, three of the same deeds he had taken away with him, and three new deeds. One of the new deeds conveyed to the plaintiff a life estate in the same tract of land described in the former deed, with remainder to the children of plaintiff. The former deed conveyed the title to the plaintiff in fee simple. The first clause of the new will reads:

"First: I will and devise to my son, Alex B. Shulsky, the west half of the southwest quarter of section fifteen (15), in township four (4) south, range nineteen (19) east Sixth P M in Doniphan county, Kansas, as per deed made to the same by me and dated June 26, 1906."

Robert P. Shulsky died February 22, 1913. Thereafter plaintiff brought this suit against his daughter, Mary E. Shulsky,

to quiet his title to the eighty acres of land, basing his claim of title under the deed of July 18, 1901, on the theory that the deeds placed in the envelope and handed to Mr. Morley were delivered by Robert P. Shulsky with the intent to make a present transfer of title to the grantees named in the deeds. Mary E. Shulsky, the defendant, claims under the second will, dated June 27, 1906. The trial court found for the plaintiff and rendered judgment quieting plaintiff's title as against the defendant, who appeals.

The burden rested upon plaintiff "to prove the absolute unconditional delivery of the deed." (*Shattuck v. Rogers*, 54 Kan. 266, 270, 38 Pac. 280.) The defendant's contention is that the deeds placed in the original envelope were testamentary in their nature. The sole question is whether the instruments were intended to pass a present interest in the lands with only the right to possession and enjoyment deferred until the maker's death, or were intended to pass an interest only upon the death of the maker. The general rule is that where the instrument discloses the maker's intention that it shall not operate until his death, it is testamentary in character and may be revoked. (*Hazelton v. Reed*, 46 Kan. 73, 26 Pac. 450.) In our view of the case, the intention of the maker is easily ascertained when the circumstances in connection with the execution of the deeds are considered. The deeds and the will of July 18, 1901, are all parts of the same transaction. The will contained the following statement:

"I have made, acknowledged and delivered to John M. Morley, banker at Severance, Kansas, warranty deeds to each of my said children, of the lands herein described as willed to them, with directions to deliver such deeds after my death and I hereby authorize and empower and direct the said John M. Morley within one month after my decease, to deliver to such of my said children the deeds for the lands granted to them as set out and described herein and as described in said deeds respectively."

The testator knew, of course, that his will was revokable at any time he saw fit to revoke it or to change the disposition of his property. He placed the will, however, and the deeds, to which the will referred, all in the hands of Mr. Morley at the same time, in the same envelope and with the same directions as to control. Subsequently he exercised the same dominion and control over the deeds as over the will, and, desiring to make another and different will, he obtained the original in-

struments, destroyed the first will and made a new one, which necessitated a change in some of the deeds. The testimony given by Mr. Reeder, the attorney who drew the first will and the deeds executed at that time, shows that Mr. Shulsky wanted to make sure that each of the devises or provisions of the will would be carried out, and for that reason saw fit to make a deed direct to each devisee and to refer to the deeds. When he altered his plans and intentions with respect to the disposition of his property and made the new will, he very naturally made new deeds as part of the new will which they accompanied, and we think it is clear beyond question that they can not be construed otherwise than as testamentary in character.

"If a properly executed will incorporates in itself by reference any document or paper not so executed, whether it be in form of a will or codicil, or of a deed or of a mere list or memorandum, the paper so referred to, if it was in existence at the time of the execution of the will and is identified by clear and satisfactory proof as the paper referred to therein, takes effect as part of the will. It is not essential that the paper referred to be itself a dispositive instrument. However, it is well settled that, in order that a paper may be incorporated in a will by reference, it must be referred to in the will as existing, and it must in fact be in existence at the time of the execution of the will." (40 Cyc. 1094.)

"If a testator, in his will, refers expressly to another paper, and the will is duly executed and attested, that paper, whether attested or not, makes part of the will." (*Chambers v. McDaniel,* 28 N. Car. 226, 229.)

"Another rule in regard to which there is complete unanimity of decision is that there are three essentials to the incorporation of an extrinsic document into a will: (1) There must be a distinct reference in the will to the document sought to be incorporated; (2) the extrinsic document must be so accurately described in the will as to assure its identity; and (3) it must be in actual existence at the time when such reference to it is made in the will." (Note, 68 L. R. A. 354.)

"It is certainly a well-settled principle in the law of wills, that a testator may so construct the disposition of his property as to make it necessary to have recourse to some paper or document in order to explain his intention, and to apply the provisions of his will to the subject-matter thereof. This is done by virtue of the principle of incorporation of the paper or document referred to into the will as part thereof; the will, in all other respects, being duly executed and attested as required by the law. In such case, the proof of the will sets up and establishes the paper referred to as a portion of the will itself, by force of the reference and the consequent incorporation." (*Vestry v. Bostwick,* 8 App. D. C. 452, 465.)

Applying the foregoing principles to the facts of this case, it appears that all the requirements essential to the incor-

poration of an extrinsic document into the will are present. There was a distinct reference in the will to the deed; it was so accurately described as to assure its identity; it was actually in existence at the time the will was made.

The banker, Mr. Morley, was a witness and was asked whether it was his understanding at the time the papers were first placed in his hands, that Mr. Shulsky no longer had the right to take the deeds away. His answer was: "I don't think so. I did n't have that understanding; had I understood that, I would not have let him take them" away. He testified, too, that he had no recollection that anything was said, either by Mr. Shulsky or the attorney who came with him to the bank when the papers were deposited the first time, to the effect that Mr. Shulsky would have no right to take them away or change them. True, it does not necessarily follow that, because the deed was a part of the will, it may not at the same time be a good and sufficient deed. If there was an actual delivery of the deed when it was placed in the hands of the banker, and if it was the maker's intention to pass a present interest in the real estate, possession and enjoyment alone to be postponed until his death, the deed controls. But in determining whether that was his intention, the fact that the deed was regarded by the testator as merely a part of the will, the fact that it was placed in the same envelope with the will, upon directions to deliver both at the same time in the event of his death, make it, in our opinion, manifest that he never intended to release his dominion and control over the deeds any more than over the will.

It follows, therefore, that the judgment will be reversed with directions to enter judgment for the defendant.

MARSHALL, J., dissents.