No. 43,403

BESSIE M. ACKERS, and UNITED TRUST COMPANY, a corporation, Administrator of the Estate of Frank C. Ackers, deceased, *Appellants,* v. THE FIRST NATIONAL BANK OF TOPEKA, a corporation, Trustee; THE KANSAS UNIVERSITY ENDOWMENT ASSOCIATION, a corporation; FRANCES C. XANDERS; and CHARLOTTE XANDERS, a minor, *Appellees.*

(387 P. 2d 840)

Opinion filed December 19, 1963.

*James C. Johnson,* of Abilene, and *Jacob A. Dickinson,* of Topeka, argued the cause, and *John F. Christner, Paul H. Royer,* and *R. H. Royer,* all of Abilene, *Paul C. Aiken, Sam A. Crow, Ralph E. Skoog,* and *Bill G. Honeyman,* all of Topeka, were with them on the briefs for the appellants.

*James T. Graves,* of Salina, and *James L. Postma,* of Lawrence, argued the cause, and *C. L. Clark, James P. Mize,* and *Thomas M. Lillard, Jr.,* all of Salina, and *Olin K. Petefish,* of Lawrence, were with them on the briefs for the appellees.

The opinion of the court was delivered by

HATCHER, C.: This appeal is from a judgment rendered in an action challenging the validity of a trust instrument which reserved a life interest in the grantor, gave him power to revoke, and conveyed property in which his nonresident wife would have otherwise acquired an interest by inheritance.

A comprehensive discussion of the issues requires a rather extensive presentation of facts.

Bessie M. Ackers married Frank C. Ackers at Las Vegas, Nevada, on February 22, 1942, while residing in the state of California. She had been previously married twice and these marriages ended in divorce. Her second divorce became final four days before her marriage to Frank.

Frank had previously been married to Iva McCauley. Her death occurred in August, 1941. One child, the defendant, Frances Corrine Xanders was born to the marriage. The defendant, Charlotte Xanders, is the minor child of Frances.

In August of 1948, Frank left Los Angeles, California, where he and Bessie resided, to return to his parental home in Abilene, Kansas. There is no evidence that Bessie and Frank saw each other again until she went to Abilene in May, 1958, except for one trip she made to Abilene in the summer of 1949. She sued him for separate mainte-

nance in the district court at Abilene, Kansas, in May, 1958, and he cross petitioned for divorce. The action was pending at the time of Frank's death. When Frank left Los Angeles in August, 1948, he was in poor health and had been without work since April or May of that year. He took no property to Abilene. Bessie never became a resident of Kansas.

Frank's parents were Hiram E. Ackers and Maude E. Ackers. They were longtime residents of Abilene, Kansas. The title to the home was vested in Hiram. Hiram and Maude continued to reside there until their respective deaths. They were survived by their only children, Frank and Deane. On at least two occasions prior to the death of Hiram, Bessie had visited Hiram and Maude in Abilene. At the time of her visit in December, 1945, Hiram was 90 years of age and Maude was past 70.

Hiram died testate on December 3, 1946. The will of Hiram was admitted to probate in the probate court of Dickinson County, Kansas. He willed all of his property to Maude E. Ackers, Frank C. Ackers, and Deane E. Ackers in equal shares. Maude elected to take half of the property under the law so that Frank and Deane each received an undivided one-fourth of Hiram's estate. His property was not distributed but was held together and operated as a unit under the terms of a trust agreement dated December 19, 1946, until Maude's death. The trust agreement was filed in the probate court of Dickinson County in the proceeding administering the estate of Hiram and was approved by the court in its decree of settlement and distribution entered February 20, 1948.

On August 28, 1955, Maude died. She left Frank only an income for life from a one-half interest in property which she owned at her death. It appears that after the death of Maude, Deane conveyed to Frank his one-half interest in the homestead.

The real and personal property to which Frank held title during his lifetime, other than one-half interest in the homestead, accrued from his one-fourth interest in his father's estate. This property, which was acquired in 1946, was made the subject of a trust in 1955. This trust is the subject of the dispute in this appeal.

The trust indenture dated November 26, 1955, appointed D. E. Ackers trustee with the provision that if, for any reason, he be unable, fail, or refuse to act, the Central National Bank and Trust Company of Topeka, Kansas should be appointed. The trust origi-

nally covered only the one-fourth interest which Frank held in real estate in Chase County, Kansas.

D. E. Ackers accepted the trust but resigned June 5, 1957. The Central National Bank and Trust Company, now the First National Bank of Topeka, immediately accepted the trust and has continued to serve. On or about the same date Frank conveyed or delivered to the trustee the balance of his property consisting of his three-fourth interest in the parental home in Abilene and stocks and bonds.

Without listing in detail the property which passed to the trustee by delivery of properly executed instruments, it will suffice to state that on May 23, 1958, the trust property consisted of Kansas real estate with a market value of $14,108, and stocks and bonds with a market value of approximately $33,200.

The trust contained the following provisions:

"Grantor reserves the right to instruct the Trustee concerning the sale of any assets held in this trust and to direct the purchase of other securities or property with the proceeds from such sale.

"The Trustee hereunder shall pay to Grantor, or, in the event of his incapacity, then to any guardian of Grantor, during his lifetime, in convenient installments, preferably monthly, the net income derived from said trust estate, or such portion thereof, . . . as Grantor may from time to time instruct said Trustee in writing. . . .

"The Trustee hereunder shall pay to Grantor . . . such portion of the corpus of said trust as Grantor may from time to time instruct said Trustee in writing. . . .

"The Grantor herein reserves the right at any time or times to amend or revoke this trust, in whole or in part, by an instrument in writing delivered to the Trustee. If this agreement is revoked in its entirety, the revocation shall take place upon the delivery of the instrument in writing to the Trustee, but any amendment or partial revocation shall take effect only when consented to in writing by the Trustee. . . .

"During the lifetime of Grantor's daughter, Frances C. Xanders, Trustee shall pay all net income derived from the trust estate in his hands to the said Frances C. Xanders and thereafter to her daughter, Charlotte Xanders, during her lifetime."

Upon their death the trustee was to transfer and deliver all of the remaining assets to the Kansas University Endowment Association.

The district court found:

"The trust and all of the property conveyed to the trustee by Frank C. Ackers, including the real estate, was made without consideration and without the knowledge or consent of his wife, Bessie M. Ackers. One of his several

purposes for creating the trust was to permit himself to enjoy the benefits and the income of the property during his own lifetime and to deprive his wife, Bessie M. Ackers, of any right therein at the time of his death, one-half of which would have otherwise gone to her under the law of descent and distribution."

On June 4, 1959, a petition was filed by Bessie against the First National Bank of Topeka, Trustee, initiating this action. On October 5, 1959, the United Trust Company, a corporation of Abilene, Kansas, and Administrator of the estate of Frank C. Ackers, deceased, was granted leave to join in the action as an additional plaintiff, and Frances C. Xanders, Charlotte Xanders, a minor, and The Kansas University Endowment Association, a corporation, were joined as additional parties defendant.

The amended petition was in two counts. The first count demanded judgment in favor of Bessie and the administrator each for one-half of the assets of the trust estate. The second count demanded judgment in favor of the administrator for all of the assets of the estate to be administered and distributed to the heirs at law.

The lower court rendered judgment in favor of the defendants and the plaintiffs have appealed.

The first question presented for determination is whether the trust instrument is void in its entirety because the settlor reserved to himself the right to direct the trustee as to the sale of the assets held in trust and the purchase of other assets; the right to the income from the trust estate during his lifetime; the right to demand the payment over of the corpus of the trust, and the right to revoke the trust.

Prior to 1949 the statute covering trusts pertaining to personal property provided:

"All gifts and conveyances of goods and chattels, made in trust to the use of the person or persons making the same, shall be void and of no effect." (G. S. 1935, 33-101.)

At the same time there was a statute, which still exists, covering trusts and powers concerning land as follows:

"A grantor of lands, reserving an absolute power of revocation, shall be deemed an absolute owner as regards creditors and purchasers." (G. S. 1949, 67-414.)

This court construed the provisions of G. S. 1935, 33-101, to harmonize with the provisions of G. S. 1949, 67-414, insofar as possible. However, if the instrument contained the power of the grantor to revoke, it was to the use of the person making the same and therefore void. (*Hazleton v. Reed*, 46 Kan. 73, 26 Pac. 450;

*Glover v. Fillmore,* 88 Kan. 545, 129 Pac. 144; *Shulsky v. Shulsky,* 98 Kan. 69, 157 Pac. 407.) The fact that the grantor reserved to himself other powers over the corpus of the trust estate did not affect its validity. Such powers as might be reserved by the settlor were considered in *Miles v. Miles,* 78 Kan. 382, 388, 96 Pac. 481, where it is stated:

"Nor does the fact that the donor retained a beneficial interest in the property during her life destroy its character as an executed trust. In *Stone v. Hackett, Executor, & others,* 78 Mass. 227, the income of the property was to be paid to the donor during his life and upon his death the principal was to be divided among certain charities. The trust was held valid. In *Davis v. Ney,* 125 Mass. 590, 28 Am. Rep. 272, a trust was upheld which allowed the donor to receive not only the income, but such part of the principal as she might need during her life. In the case of *In re Estate of Soulard,* 141 Mo. 642, 663, 43 S. W. 617, 622, it was held that even the reservation of the right to direct the reinvestment of the fund was not inconsistent with a valid trust, because the reservation did not affect the title of the donees or devest them of their interest and was only a reasonable provision for the protection of the equitable rights of the donor. In the opinion it was said:

" 'The reservation was not of title, but of power coupled with the trust, and is not inconsistent with the complete transfer of the title *in praesenti.*' (p. 664.)"

In *Herd v. Chambers,* 158 Kan. 614, 149 P. 2d 583, this court had under consideration the construction of G. S. 1935, 33-101 and held:

"Provisions of the declaration of trust described in the opinion examined and held: (*a*) No such ambiguity exists in its terms pertaining to use, disposition and control of the trust estate as to require consideration of extrinsic evidence, (*b*) the provision that the settlor of the trust estate may by supplemental writings direct distribution of its corpus to other persons and corporations reserves to such settlor the right to direct that the proceeds of the entire estate be paid to such persons as he sees fit, including himself, (*c*) other provisions pertaining to management and control of the estate by the trustee and the settlor's attorney, likewise the provision directing payment of income to the settlor's wife, if he predecease her, are dependent on and subject to the clause reserving to the grantor the right to otherwise direct the distribution of the entire estate by supplemental writings.

"When construed as a whole the trust agreement created nothing more than a revocable trust with full power in the settlor to abrogate its terms and such trust was for his use and benefit." (Syl. 2 and 3.)

This was the only construction left open to the court if the language of the statute was to be given any effect. The statute made no exceptions as to the invalidity. The trust instrument was simply void if revocable by the settlor, and thus made "to the use of the person or persons making the same."

The statute was contrary to the general law of the land. It was amended by the legislature in 1949 to read:

"All gifts and conveyances of goods and chattels, made in trust to the use of the person or persons making the same shall, *to the full extent of both the corpus and income made in trust to such use,* be void and of no effect, *regardless of motive,* as to all past, present or future creditors; but otherwise shall be valid and effective." (G. S. 1949, 33-101. The emphasis indicates the new matter added by the amendment.)

This court has not been called upon to interpret the statute since the amendment. However, the intent and purpose of the legislature would appear to be clear. If the settlor retained the control over the corpus of the trust such as the right to remove the trust assets or the right to revoke the trust, it was void as to creditors regardless of motive but otherwise it was valid. This construction establishes the same basic principle for testing the validity of trusts pertaining to personal property as that pertaining to land. (G. S. 1949, 67-414.) It also places the Kansas rule in harmony with the general rule announced by the courts of other states. (See the cases hereinafter cited covering the more limited question before us.)

We must conclude that there being no creditors, the trust was valid and could not be challenged by the administrator or other persons, unless for or by the wife in defense of her rights under the provisions of G. S. 1949, 59-504, 59-505, or 59-602.

The question is next raised as to the statutory rights of one spouse in the property of the other.

Kansas has never operated under the common law applicable to husband and wife by which husband and wife were in legal contemplation but one person and that person was the husband; the legal existence of the wife for most purposes merged in that of the husband, and the husband took a freehold estate in the wife's lands during coverture and the right to convey her chattels real.

The Kansas Constitution, article 15, section 6, provides:

"The legislature shall provide for the protection of the rights of women, in acquiring and possessing property, real, personal and mixed, separate and apart from the husband; and shall also provide for their equal rights in the possession of their children."

The legislature immediately enacted laws to complement the constitutional provision:

"The property, real and personal, which any woman in this state may own at the time of her marriage, and the rents, issues, profits or proceeds thereof, and any real, personal or mixed property which shall come to her by descent,

devise or bequest, or the gift of any person except her husband, shall remain her sole and separate property, notwithstanding her marriage, and not be subject to the disposal of her husband or liable for his debts.

"A married woman, while the marriage relation subsists, may bargain, sell and convey her real and personal property and enter into any contract with reference to the same in the same manner, to the same extent and with like effect as a married man may in relation to his real and personal property." (G. S. 1949, 23-201, 23-202.)

The statutes gave the wife the same rights as to ownership, power to convey and control her separate property as those of the husband. (*Putnam v. Putnam,* 104 Kan. 47, 177 Pac. 838; *State v. Koontz,* 124 Kan. 216, 257 Pac. 944.)

"The statute above quoted guaranteed to every married woman that the property which she had at her marriage, with the rents, issues and profits thereof, should remain her sole and separate property and not be subject to disposal by her husband *nor liable for his debts;* that she might bargain, sell and convey her property and might enter into any contract with reference to the same, to the same extent and effect as might any married man; that she might carry on any trade or business and that her earnings from a trade or business, labor or services would remain her separate property and might be used and *invested by her in her own name." (Nagle v. Tieperman,* 74 Kan. 32, 38, 85 Pac. 941.)

It will be understood that the rule as announced does not apply to property jointly accumulated during the marriage. However, it is conceded in this case that the property in dispute was acquired by inheritance, rendering a consideration of the question as to what constitutes jointly acquired property unnecessary.

One spouse has no direct interest in property inherited by the other, and has no rights or liabilities in connection with litigation between heirs. (*Rost v. Heyka,* 133 Kan. 292, 299 Pac. 969; *Carter v. Becker,* 69 Kan. 524, 77 Pac. 264.)

There have been no statutory restrictions placed on the right of one spouse to make disposition of separately owned personal property regardless of the knowledge and consent of the other. It has been considered that to restrict either spouse in the sale or disposal of separately owned personal property without the consent of the other would be disastrous to trade and commerce. A different rule has been made applicable to real estate by statute:

"Also, the surviving spouse shall be entitled to receive one-half of all real estate of which the decedent at any time during the marriage was seized or possessed and to the disposition whereof the survivor shall not have consented in writing, or by a will, or by an election as provided by law to take under a will, except such real estate as has been sold on execution or judicial sale, or

taken by other legal proceeding: *Provided, That the surviving spouse shall not be entitled to any interest under the provisions of this section in any real estate of which such decedent in his lifetime made a conveyance, when such spouse at the time of the conveyance was not a resident of this state and never had been during the existence of the marriage relation."* (G. S. 1949, 59-505, emphasis supplied.)

It will be noted that the first part of the section gives the surviving spouse one-half of all the real estate which the decedent was at any time seized or possessed during the marriage, with the exceptions noted. This was not a common law right. It existed only by virtue of the statute. The proviso definitely excepted from the provision of the statute a surviving spouse who, at the time of the conveyance, was not and never had been a resident of this state during the existence of the marriage relation. The fact that the wife, the surviving spouse, was a resident of the state of California at all times, material to this controversy, is not disputed. In *McGill v. Kuhn*, 186 Kan. 99, 103, 348 P. 2d 811, it is stated:

"In the first paragraph of the answer, defendant admits that she is not and never has been a resident of Kansas. In light of this admission, it would seem that the deeds from John M. Kuhn were good and sufficient conveyances to transfer any and all title possessed by him to the plaintiffs, regardless of his marital status (G. S. 1949, 59-505). It has long been the law of this state that a wife need not join in a conveyance of Kansas real estate made by her husband, if the wife has never been a resident of the state. . . ."

We must conclude that Bessie, the surviving spouse, had no claim on her deceased husband's property or the corpus of the trust by virtue of G. S. 1949, 59-505.

The appellant, Bessie, contends that there are two other statutes which give her a right to one-half of her deceased husband's assets and the trust instrument was executed in a fraudulent attempt to defeat such right.

The statute relating to intestate succession of a surviving spouse (G. S. 1949, 59-504) provides in part:

". . . If the decedent leaves a spouse and a child or children, or issue of a previously deceased child or children, one-half of such property shall pass to the surviving spouse."

The statute limiting testamentary power (G. S. 1949, 59-602) insofar as applicable to a spouse provides:

". . . Either spouse may will away from the other half of his property. subject to the rights of homestead and allowances secured by statute. Neither spouse shall will away from the other more than half of his property, subject to such rights and allowances, unless the other shall consent thereto in writing

executed in the presence of two or more competent witnesses, or shall elect to take under the testator's will as provided by law."

It will be noted that the two statutes above quoted make no distinction between a resident and a nonresident spouse. They both have the same right of intestate succession and they are both protected by the limitation on testamentary power.

In *McKelvey v. McKelvey*, 75 Kan. 325, 328, 89 Pac. 663, it is stated:

"This statute does not discriminate against a nonresident wife in favor of a resident wife as to the interest the former shall have in the real estate of her husband situated in Kansas. It excludes her from any interest in any lands owned by the husband of which he has made a conveyance, when the wife at the time of the conveyance is not or never has been a resident of the state, and it excludes both the resident and nonresident wife from any interest in any lands which have been sold on execution or other judicial sale. But as to lands not thus disposed of, and not necessary for the payment of his debts at the time of his death, the interest of the non-resident wife is equal to that of the resident wife. The interest which the statute gives to the wife in the real estate of her husband during his life is not easily classified or defined. Because of this difficulty it has been thought by some to be in its nature an inheritance, and such a suggestion may be found in some of the opinions of this court. But practically the entire trend of the decisions of this court is to treat it as a present existing interest—one which the wife may protect by an appropriate action during the life of the husband and against his wrongful acts. (*Busenbark v. Busenbark*, 33 Kan. 572, 7 Pac. 245; *Flanigan v. Waters*, 57 Kan. 18, 45 Pac. 56.)"

It would appear that a resident spouse has a vested right of inheritance, a one-half interest, in the real estate which the deceased spouse was seized or possessed at any time during the marriage. (G. S. 1949, 59-505.) Neither could it be disposed of by will without the consent of the other. (G. S. 1949, 59-602.)

A resident spouse takes but a contingent right to inherit the personal property owned by the other. The right to inherit is contingent upon the other spouse not conveying the property during his or her lifetime.

A nonresident spouse has only a contingent right of inheritance in both the real estate and personal property of the other. The right to a one-half interest in the real estate is not protected by G. S. 1949, 59-505. The right to inherit under G. S. 1949, 59-504 and protected by 59-602 from testamentary disposition is contingent upon the spouse holding title to the property, not conveying it during his or her lifetime with or without consideration and without the knowledge or consent of the other.

The right of the surviving spouse to inherit is greater than that of children mentioned in G. S. 1949, 59-504. The limitation on testamentary power contained in G. S. 1949, 59-602 (2) is not extended to children. The property may be conveyed during the lifetime of the parent or it may be devised and bequeathed away from the children by will.

We have now reached the crux of this controversy. If a spouse can during his or her lifetime make an absolute conveyance of all separately owned property, both real and personal, and thus defeat the right of a nonresident spouse to inherit under the provisions of G. S. 1949, 59-504, may the right be defeated by a trust conveyance which the grantor reserves the right to revoke?

The trial court concluded as a matter of law that:

". . . There is merit on both sides of the issue and a strong case is made for the position that too much control was reserved in this trust to make the conveyances absolute.

"By testing the facts of this case by the American Law Institute, Restatement of the Law of Trusts, Second Edition, and Scott on The Law of Trusts, Second Edition, the trust and transactions herein dealt with barely fall on the side of that which is valid and permissible."

The lower court correctly applied the law, as found in the Restatement of the Law of Trust, to the facts in the present case. However, the particular phase of the restatement in which we are interested is by no means universally accepted.

Restatement, Second, Trusts, § 57, page 151, states the general rule as follows:

"Where an interest in the trust property is created in a beneficiary other than the settlor, the disposition is not testamentary and invalid for failure to comply with the requirements of the Statute of Wills merely because the settlor reserves a beneficial life interest or because he reserves in addition a power to revoke the trust in whole or in part, and a power to modify the trust, and a power to control the trustee as to the administration of the trust."

The above statement is very generally accepted and followed. The restrictions on the general rule are stated on page 153 as follows:

"The rule stated in this Section is applicable although the trust is one which could not be created by will. If the owner of property transfers it inter vivos to another person in trust, the intended trust is not invalid merely because the settlor reserves a beneficial life estate and a power to revoke or modify the trust, even though he was prohibited by statute from creating a similar trust by will.

"Thus, if it is provided by statute that the wife of a testator shall be entitled to a certain portion of his estate of which she cannot be deprived by will (see

§ 146A), a married man can nevertheless transfer his property inter vivos in trust and his widow will not be entitled on his death to a share of the property so transferred, even though he reserves a life estate and power to revoke or modify the trust. Where, however, an outright gift would not operate to deprive the wife of her distributive share, a trust created under the same circumstances would be equally ineffective.

"ILLUSTRATION:

"A, a married man, transfers property to B in trust to pay the income to A for life and on his death to convey the property to C. By the terms of the trust A reserves power to revoke or modify the trust. By statute it is provided that on the death of a married man, his wife shall be entitled to one half of the property owned by him at his death, and that she cannot be deprived of her share in the property by his will. A's widow is not entitled to any part of the trust estate."

The foregoing statement covers the factual situation in this present controversy. The decisions of the courts of the various states are in direct conflict on the question. It would be impossible to state a general rule which it could be said is supported by the weight of authority.

Our somewhat limited research discloses that the states of Florida (*Williams et al. v. Collier,* 120 Fla. 248, 158 So. 815); Kentucky (*DeLeuil's Executors v. DeLeuil,* 225 Ky. 406, 74 S. W. 2d 474); Maryland (*Brown v. Fidelity Trust Co.,* 126 Md. 175, 94 Atl. 523); Massachusetts (*Kerwin v. Donaghy,* 317 Mass. 559, 59 N..E. 2d 299); Michigan (*Rose v. Union Guardian Trust Co.,* 300 Mich. 73, 1 N. W. 2d 458), and Vermont (*Dunnett et al. v. Shields and Convant,* 97 Vt. 419, 123 Atl. 626) adhere to the rule that one spouse may by a revocable living trust make a valid conveyance of separately owned property in which the other would otherwise have a right of inheritance.

The states of Illinois (*Smith v. Northern Trust Co.,* 322 Ill. App. 168, 54 N. E. 2d 75); Maryland (*Mushaw v. Mushaw,* 183 Md. 511, 39 A. 2d 465); New Hampshire (*Walker v. Walker,* 66 N. H. 390, 31 Atl. 14); New York (*Newman v. Dore,* 275 N. Y. 371, 9 N. E. 2d 966, 112 A. L. R. 643); Pennsylvania (*Pengelly Estate,* 374 Pa. 358, 97 A. 2d 844), and Virginia (*Norris v. Barbour,* 188 Va. 723, 51 S. E. 2d 334) adhere to the rule that a conveyance by one spouse to a trustee, reserving the income for life and power of revocation, *is illusory and void* as to the rights of the surviving spouse under the law of descent and distribution.

The courts of Ohio followed the latter rule until 1961. A review of the opinions in the Ohio cases will present the reasoning on both

sides of this controversy. In the case of *Bolles v. Toledo Tr. Co.*, 144 Ohio St. 195, 58 N. E. 2d 381, the Supreme Court of Ohio held in the first three paragraphs of the syllabus:

"A husband may dispose of his personal property during his lifetime without the consent of his wife; but a husband may not bar his widow of her right to a distributive share of any property which he owns and of which he retains the right of disposition and control up to the time of his death.

"Section 8617, General Code, which provides that a revocable and amendable living trust 'shall be valid as to all persons' except creditors, does not deprive the settlor of all dominion over the trust *res* so that a widow electing to take under the statute of descent and distribution is barred from claiming a distributive share of the property in such trust.

"The transfer of property to a trustee under an agreement whereby the settlor reserves to himself the income during his life with the right to amend or revoke, is valid by virtue of Section 8617, General Code, but under such a trust agreement settlor does not part absolutely with the dominion of such property and his widow electing to take under the statute of descent and distribution may assert her right to a distributive share of the property in such trust at settlor's death." (p. 195.)

In the opinion it is stated:

". . . Therefore, we are led to the conclusion that as to the widow, trusts Nos. 331 and 520 were illusory. The term illusory is defined by Webster as 'deceiving, or tending to deceive; fallacious, illusive.' This criticism does not necessarily affect the validity of either of these trusts under Section 8617, General Code, but it is intended to show that such trusts may not be used as a device to deprive the widow of her distributive share of the property possessed by her husband at the time of his death. To the extent that such an arrangement, if allowed to stand, would deprive the widow of her distributive share of property, it is voidable at the instance of the widow." (pp. 212, 213.)

In *Harris v. Harris*, 147 Ohio St. 437, 72 N. E. 2d 378, it was again held in the syllabus:

"Under the provisions of Section 8617, General Code, the transfer of property to a trustee is valid under an agreement whereby the settlor reserves to himself the income during his life with the right to amend or revoke; but when such settlor does not part with dominion and control over the trust property, his widow may elect to take under the statutes of descent and distribution and may assert her right to a distributive share of such property after his death. (Paragraph three of the syllabus in the case of *Bolles v. Toledo Trust Co., Ex'r*, 144 Ohio St. 195, approved and followed.)"

Three of the justices dissented.

In *Smyth v. Trust Co.*, 172 Ohio St. 489, 179 N. E. 2d 60, the court reversed its position of long standing and held in the second paragraph of the syllabus:

"A valid voluntary trust *in praesenti*, formally executed by a husband and existing at the time of his death, in which he reserved to himself the income therefrom during his life, coupled with an absolute power to revoke the trust in whole or in part, as well as the right to modify the terms of the settlement and to control investments, bars the wife, upon the death of the settlor, from a claimed right to a distributive share of the property in the trust upon her election to take under the statutes of descent and distribution. (Paragraphs one, two, three, seven, ten and eleven of the syllabus in *Bolles v. Toledo Trust Co., Ex'r*, 144 Ohio St. 195, and the syllabus in *Harris v. Harris, a Minor*, 147 Ohio St. 437, overruled.)"

In the opinion the court referred to the syllabus in the *Harris* case and then stated:

"The phrase, 'dominion and control,' as used in that syllabus, of course was construed in the *Bolles case* (paragraphs two and three of the syllabus) with the statement that if a settlor 'reserves to himself the income during his life with the right to amend or revoke,' he has not parted absolutely with dominion over the property.

"Matthias, J., in a dissenting opinion, observed:

"'The decision of the instant case, therefore, must turn on whether the agreement created an agency. If it constituted a trust, it is valid and the res is not a part of the net estate; if an agency, the res did become a part of the net estate.'

"Zimmerman, J., likewise dissenting stated:

"'It seems incongruous indeed that a trust may be valid giving the trustee title to and a vested interest in the trust property and yet the settler's widow, upon electing not to take under his will, may be accorded the right by judicial fiat to claim a "distributive share" of the trust property under the statutes of descent and distribution.'

"It is our purpose now to state the law as we conceive it to be as to the case before us, and, so far as the *Bolles and Harris cases* are inconsistent therewith, they will be overruled." (p. 501.)

The court adopted the reasoning in the dissenting opinions and concluded the opinion:

"We reject the rule of the *Bolles and Harris cases*, to the effect that, if a settlor reserves to himself the income during life, with the right to amend or revoke the trust or any part thereof, such reserved rights and powers defeat the parting with dominion over the trust property and thereby create a right in the widow to assert 'her right to a distributive share of the property in such [trust] at settlor's death.' Neither the statute (Section 1335.01, Revised Code, *supra*) nor the general rule recognized as existing in the majority of courts of last resort and stated in the Restatement of the Law, *supra*, justifies the continued recognition in this state of the rule enunciated in the *Bolles* and *Harris cases*." (pp. 503, 504.)

This court has not heretofore been called upon to determine this specific question. However, the decisions of this court, insofar as at

all analogous, would appear to lean toward the protection of the right of a spouse to inherit as against any semblance of overreaching on the part of the other by the execution of an illusory instrument.

In *Poole v. Poole,* 96 Kan. 84, 89, 150 Pac. 592, this court, without making reference to any statute, stated generally as follows:

"Where the transfer or gift is merely colorable and there is a voluntary transfer or conveyance by which the husband reserves to himself an interest in or a power to dispose of the property, it may be declared void as against the widow and she may participate in its distribution upon the theory that the title still remained in the husband. (*Small v. Small,* supra; *Padfield v. Padfield et al.,* supra; *Thayer v. Thayer et al.,* 14 Vt. 107; *Cameron v. Cameron et al.,* 10 Smed & M. (18 Miss.) 394, 48 Am. Dec. 759; *Lightfoot's Executors and others v. Colgin and Wife,* 5 Munf. (Va.) 42; *Stewart v. Stewart,* 5 Conn. 317; *Dunnock v. Dunncok,* 3 Md. Ch. 140; *Jones v. Somerville,* 78 Miss. 269, 28 South. 940, 84 Am. St. Rep. 627.)"

In *Small v. Small,* 56 Kan. 1, 12, 42 Pac. 323, this court quoted with approval from a note in Kerr on Frauds and Mistakes, p. 220, as follows:

"There can be no doubt of the power of a husband to dispose absolutely of his property during his life, independently of the concurrence and exonerated from the claim of his wife, provided the transaction is not merely colorable, and be unattended with circumstances indicative of fraud upon the rights of the wife. If the disposition of the husband be *bona fide,* and no right is reserved to him, though made to defeat the right of the wife, it will be good against her."

We conclude that the husband of a nonresident wife may, by absolute sale, gift or other transfer made in good faith during his lifetime, deprive the wife of her distributive share. However, if the transfer is colorable only and the husband retains the power of revocation, it is fallacious, illusive and deceiving, and will be considered as fraud on the rights of the widow where she is deprived of her distributive share.

The trust instrument in question reserved to the donor the power of revocation. The donor did not part with dominion over the trust *res* and the widow is not barred from claiming her distributive share of the corpus of the trust under the law of intestate succession. (G. S. 1949, 59-504.)

The appellees suggest that after the death of the donor's daughter and granddaughter, the corpus of the trust was to pass to the Kansas University Endowment Association. They then contend, and the trial court concluded, that this court is committed to the rule that it is the fixed policy of the law to uphold charitable gifts

as valid whenever possible. This court has held charitable trusts to be favorites of the law and that they must be upheld whenever possible. (*In re Estate of Porter,* 164 Kan. 92, 187 P. 2d 520.) However, this court is also committed to the rule that one spouse should not be permitted to defeat the statutory rights of the other by a colorable or illusory conveyance.

There is no place for the application of the rule favoring charities under the facts in this controversy. Public welfare is not enhanced by a husband conveying all of his property to charity, by a colorable instrument, and thus leaving his widow to seek alms.

The conclusions reached render the rather extensive controversies as to admissibility of evidence, competency of witnesses, and related alleged trial errors immaterial.

The judgment is affirmed insofar as applicable to one-half the corpus of the trust. The judgment is reversed insofar as it deprives the widow of her right of inheritance under G. S. 1949, 59-504, and the district court is instructed to enter judgment directing the trustee to deliver to the administrator of the estate of Frank C. Ackers' one-half of the corpus of the trust as it existed at the death of Frank C. Ackers, plus increments accruing therefrom, but less the trustee's reasonable cost of administering the trust, to be administered according to law for the sole benefit of Bessie M. Ackers.

The cost of this appeal shall be taxed to the trust estate and paid by the trustee as part of the costs of administering the trust before transfer of one-half of the trust *res* to the administrator.

APPROVED BY THE COURT.